# Exhibit 5

## LITIGATION COOPERATION AND SETTLEMENT AGREEMENT

THIS LITIGATION COOPERATION and SETTLEMENT AGREEMENT ("Agreement") is made and entered into as of the 1st day of June 2012 (the "Effective Date"), by and among the undersigned counsel on their own behalf and as counsel for and on behalf of their respective clients who are plaintiffs in: (a) *Peterson, et al. v. Islamic Republic of Iran, et al.*, No. 10 Civ. 4518 (BSJ) (GWG) (S.D.N.Y.) (the "Peterson Plaintiffs"); (b) *Greenbaum, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 02-2148 (RCL) (D.D.C.) (the "Greenbaum Plaintiffs"); (c) *Acosta, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 06-745 (RCL) (D.D.C.) (the "Acosta Plaintiffs"); (d) *Rubin, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 01-1655 (RCL) (D.D.C.) (the "Rubin Plaintiffs"); (e) *Estate of Heiser, et al. v. Islamic Republic of Iran, et al.*, Civil Action Nos. 00-02329 and 0102104 (RCL) (D.D.C.) (the "Heiser Plaintiffs"); (f) *Levin, et al. v. Islamic Republic of Iran*, Civil Action No. 05-02494 (GK) (D.D.C.) (the "Levin Plaintiffs"); (g) *Valore, et al. v. Islamic Republic of Iran, et al.*, Civil Action No. 03-1959 (RCL) (D.D.C.) (the "Valore Plaintiffs"); (h) *Kirschenbaum, et al. v. Islamic Republic of Iran, et al.*, Civil Action Nos. 03-1708 (RCL) and 08-01814(RCL) (D.D.C.) (the "Kirschenbaum Plaintiffs"); (i) *Beer, et al. v. Islamic Republic of Iran, et al.*, Civil Action Nos. 06-00473 (RCL) and 1:08-cv-01807 (RCL) (D.D.C.) (the "Beer Plaintiffs"); (j) *Murphy v. Islamic Republic of Iran, et al.*, 06-cv-00596 (RCL) (D.D.C.)(the "Murphy Plaintiffs"); and (k) *Estate of Bland, et al. v. Islamic Republic of Iran, et al.*, 05-cv-2124 (RCL)(D.D.C.) (the "Bland Plaintiffs"). All of the above-mentioned Plaintiffs are referred to hereafter collectively as the "Creditor Plaintiffs" and each group separately as a "Creditor Plaintiff." The Creditor Plaintiffs and the undersigned counsel are referred to hereafter collectively as the "Parties" and, individually, as a "Party."

### RECITALS

R-1.    The Creditor Plaintiffs possess or may obtain judgments for compensatory and/or punitive damages (each a "Creditor Judgment") against the Islamic Republic of Iran ("Iran") and/or agencies and instrumentalities of Iran for wrongful death and grievous injuries resulting from Iran-sponsored terrorist acts committed on United States soil and abroad.

R-2.    As of the Effective Date, the Creditor Plaintiffs possess Creditor Judgments against Iran and/or agencies and instrumentalities of Iran for compensatory damages, exclusive of post-judgment interest, in the following amounts, entered on the dates indicated:

| Creditor Plaintiff | Amount of Creditor Judgment | Date of Entry |
|---|---|---|
| Peterson Plaintiffs | $2,656,944,877 | September 7, 2007 |
| Greenbaum Plaintiffs | $ 19,879,023 | August 31, 2006 |
| Acosta Plaintiffs | $ 50,172,000 | August 31, 2006 |
| Rubin Plaintiffs | $ 71,500,000 | September 10, 2003 |
| Heiser Plaintiffs | $ 291,089,966 | December 22, 2006 and September 30, 2009 |
| Levin Plaintiffs | $ 28,807,719 | February 6, 2008 |

| | | |
|---|---|---|
| Valore Plaintiffs | $ 290,291,092 | November 5, 2009 |
| Kirschenbaum Plaintiffs | $ 13,750,000 | October 15, 2007 |
| Beer Plaintiffs | $ 13,000,000 | October 15, 2007 |
| Murphy Plaintiffs | $ 31,865,570 | September 24, 2010 |
| Bland Plaintiffs | $ 277,805,908 | December 21, 2011 |
| Total | $3,745,106,155 | |

Certain of the Creditor Plaintiffs also possess judgments against Iran and/or its agencies and instrumentalities for punitive damages ("Punitive Damages Judgments").

R-3. The Parties to this Agreement have asserted, or plan to assert, various claims, defenses, counterclaims and cross-claims against each other and others in connection with the civil action pending in the United States District Court for the Southern District of New York (the "Court") styled *Peterson v. Islamic Republic of Iran, et al.*, 10-CV-4518 (BSJ)(GWG) (the "Litigation").

R-4. The Litigation relates to certain debt securities, related cash and/or other property held by Citibank, N.A. ("Citibank") in an account or accounts in New York for its customer Clearstream Banking, S.A. ("Clearstream") and/or affiliates or transferees of Clearstream, and in which the Parties and others have alleged that Iran holds an interest (the "Clearstream Assets").

R-5. The Parties believe there to be approximately $1.8 billion in Clearstream Assets before the Court in connection with the Litigation.

R-6. The Parties believe it to be in their mutual best interests to join resources and cooperate to recover funds in the Litigation to satisfy the Creditor Judgments against Iran, and to equitably share in any recovery of the Clearstream Assets awarded in satisfaction of the Creditor Judgments, including any post-judgment interest to which the Creditor Plaintiffs may respectively be entitled and subject to any reductions of the Creditor Judgments based upon other satisfactions obtained, on the terms set forth below.

R-7. The Parties have agreed to resolve all claims and disputes as between and among themselves in and relating to the Litigation in accordance with the terms of this Agreement and cooperate with each other to obtain a turnover of the Clearstream Assets at issue in the Litigation. This Agreement is entered into for the purpose of settlement and compromise.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. RECITALS. The recitals to this Agreement are true and correct, and are incorporated into and made a substantive part of this Agreement.

-2-

2. **JOINT PURSUIT AND DISTRIBUTION OF CLEARSTREAM ASSETS.**

2.1. The Parties agree to jointly pursue a turnover order from the Court with respect to all of the Clearstream Assets at issue in the Litigation.

2.1.1. The Parties agree to consult with each other in good faith to try to determine joint legal positions and strategy for the mutual benefit of all Parties concerning the recovery of the Clearstream Assets.

2.1.2. Nothing contained in this Agreement shall limit the right of any Party, in the event of a disagreement between the Parties as to legal positions or strategy, to exercise such Party's independent professional judgment and to take any action that such Party reasonably believes is in its best interest, so long as such action is taken in accord with the terms of this Agreement.

2.2. The Parties agree that the net proceeds of all Clearstream Assets recovered by the Judgment Creditors in the Litigation with respect to their Creditor Judgments, including post-judgment interest thereon, (the "Recovered Assets") shall be divided as set forth in sections 2.2.1 and 2.2.2.

2.2.1. If the Court enforces the Creditor Judgments of all the Creditor Plaintiffs against the Clearstream Assets, the Recovered Assets will be divided among the Creditor Plaintiffs in the following percentages:

| Creditor Plaintiff | Percentage of Recovered Assets |
|---|---|
| Peterson Plaintiffs | 70.944% |
| Greenbaum Plaintiffs | 00.531% |
| Acosta Plaintiffs | 01.340% |
| Rubin Plaintiffs | 01.909% |
| Heiser Plaintiffs | 07.773% |
| Levin Plaintiffs | 00.769% |
| Valore Plaintiffs | 07.751% |
| Kirschenbaum Plaintiffs | 00.367% |
| Beer Plaintiffs | 00.347% |
| Murphy Plaintiffs | 00.851% |
| Bland Plaintiffs | 07.418% |
| **Total** | **100.000%** |

Subject to Section 5.4 below, these percentages shall continue to be applicable notwithstanding any subsequent collections by one or more Creditor Plaintiffs in proceedings other than the Litigation.

-3-

2.2.2. If Clearstream Assets are recovered in the Litigation based upon one or more Creditor Judgment(s) of a Creditor Plaintiff (each a "Recovering Party") but not the Creditor Judgment(s) of one or more other Creditor Plaintiffs (each a "Non-Recovering Party"), then each Recovering Party shall pay over to the Non-Recovering Parties (as a group) an equal percentage of each Recovering Party's net recoveries of Clearstream Assets up to (but not more than) 25% of such net recoveries such that the Non-Recovering Parties will receive up to (but not more than) 25% of the amount of the Non-Recovering Parties' judgments for compensatory damages, exclusive of interest. For avoidance of doubt, and by way of example only, if the Court enforces Creditor Judgments of Recovering Parties such that the Recovering Parties receive a net recovery of $300 million, and the Court for any reason refuses to enforce the Creditor Judgments of Non-Recovering Parties holding judgments for compensatory damages in the aggregate amount of $3 billion, exclusive of interest, then the Recovering Parties will pay over to the Non-Recovering Parties $75 million. By way of further example, if the Court enforces judgments of Recovering Parties such that the Recovering Parties receive a net recovery of $2 billion, and the Court for any reason refuses to enforce the judgments of Non-Recovering Parties holding judgments for compensatory damages in the aggregate amount of $300 million, exclusive of interest, then the Recovering Parties will pay over to the Non-Recovering Parties $75 million. In the event that Recovered Assets are distributed to Non-Recovering Parties pursuant to this section, then the amount of Recovered Assets remaining after distributions to Non-Recovering Parties pursuant to this section will be divided among the Recovering Parties pro rata in proportion to the relative size of the amount of each Recovering Party's Creditor Judgment in relation to the total amount of all Recovering Parties' Creditor Judgments as set forth in Recital R-2 above. The amounts distributed to Non-Recovering Parties pursuant to this section will be divided among the Non-Recovering Parties pro rata in proportion to the relative size of the amount of each Non-Recovering Party's Creditor Judgment in relation to the total amount of all Non-Recovering Parties' Creditor Judgments as set forth in Recital R-2 above.

2.2.3. The division of recoveries set forth in sections 2.2.1. and 2.2.2. shall not in any way alter or impact any prior agreements among the individual members of Creditor Party groups and with their respective counsel regarding the division of recoveries within each respective group and any recoveries within any of such groups to subordinate claims to recoveries, all of which prior agreement shall remain in full force and effect.

2.2.4. Nothing in this Agreement shall affect the right of each Creditor Plaintiff to elect to direct that any amount paid to such Creditor Party be allocated, in whole or in part, to his Punitive Damages Judgment, provided that such election shall not affect any Creditor Party's right to receive the distribution percentages in Section 2.2.1 or a Non-Recovering Party's right to receive payment as provided in Section 2.2.2. Except as provided in Sections 2.2.1 and 2.2.2 above, this Agreement similarly shall not affect or in any way diminish or restrict the right of any Creditor Plaintiff to enforce a Punitive Damages Judgment against the Clearstream Assets in the Litigation. In the event that punitive damages are recovered against the Clearstream Assets in the Litigation, the Parties agree to work in good faith to determine an appropriate mechanism for the distribution of those punitive damages that is fair and reasonable and that distributes the Clearstream Assets in the percentages set forth in Section 2.2.1. and 2.2.2, as may be applicable, after giving effect to the income taxes actually paid in connection with any award of Punitive Damages. The Parties further agree to work in good faith to structure any judgment

entered in this action in a manner that minimizes the amount of income taxes payable in connection with any award of Punitive Damages to any Creditor Plaintiff. In the event that the provisions of this paragraph regarding income taxes on Punitive Damages is declared unenforceable for any reason, such a holding shall not affect the validity and enforceability of the remainder of this Agreement, and those provisions of this paragraph may be severed from the remainder of the Agreement.

    2.2.5. The Parties agree to seek an order from the Court that provides that the application of the proceeds from any judgment awarding a turnover of the Clearstream Assets be applied by the Clerk of Court to reduce the judgments of each of the Creditor Plaintiffs, with each of the Creditor Plaintiffs' judgments being reduced based on the distributions set forth above in sections 2.2.1, 2.2.2 or 2.2.4, as the case may be.

    2.2.6. If the Court declines to direct the Clerk of Court as set forth in section 2.2.5, above, then the Creditor Plaintiff whose judgment is reduced by the full amount of the judgment awarding a turnover shall receive at the time of payment an assignment in the form attached hereto as Exhibit A, from the other Creditor Plaintiffs who received payment from the Clearstream Assets but did not receive a reduction in their respective judgments, which assignment shall assign such Creditor Plaintiff's right to payment under their judgment(s) in an amount equal to the amount by which that Creditor Plaintiff's judgment was not reduced ("Payment Assignment Rights").

    2.2.7. The Payment Assignment Rights and assignments executed in connection therewith shall not be due and payable prior to the satisfaction of the unassigned portion of any Creditor Plaintiff's judgment (including all accrued interest). For the avoidance of doubt, and by way of example only, If Creditor Plaintiff A's total outstanding Creditor Judgment against Iran is $100,000 and it provides a $5,000 Payment Assignment Right to Creditor Plaintiff B, such $5,000 assignment shall not be due or payable until after the balance of Creditor Plaintiff A's Creditor Judgment of $95,000 has been satisfied.

  2.3. If the Court awards attorneys' fees and/or costs to Citibank and/or any other party to the Litigation, and orders such fees and/or costs to be paid out of any recovery of the Clearstream Assets by any Creditor Plaintiff, the Parties agree that the attorneys' fees and/or costs will be apportioned consistent with the distribution of Recovered Assets as set forth above in sections 2.2.1 or 2.2.2, as the case may be.

  2.4. The Parties agree to cooperate and jointly oppose or seek mitigation in responding to any request for an award of any attorneys' fees and costs made by Citibank and/or any other party to the Litigation. If, after the Parties communicate in good faith, they are unable to reach an agreement regarding the method and manner for opposing or mitigating any request for an award of attorneys' fees and costs, any party may thereafter choose to oppose an award of attorneys' fees or costs on its own.

  2.5. The Creditor Plaintiffs agree that the payment of any attorneys' fees, costs and/or expenses incurred by their respective counsel with regard to the Litigation and/or any

work performed pursuant to this Agreement will be governed by each Creditor Plaintiff's agreement with its respective counsel. No Creditor Plaintiff shall be liable for the payment of any other Creditor Plaintiff's attorneys' fees and expenses.

3. PREPARATION OF PLEADINGS, MOTIONS, AND OTHER DOCUMENTATION.

3.1. The Parties shall share responsibility for preparing any and all pleadings, motions, or other documents (collectively, the "Filings") necessary to effectuate this Agreement and obtain a turnover of the Clearstream Assets.

3.2. Review of Filings.

3.2.1. The Parties agree to provide to counsel for each Party a copy of any and all Filings in the Litigation, for review and comment at least three (3) business days prior to the deadline for filing. If comments are not received by the Party responsible for filing the same within twenty-four (24) hours of the deadline for filing the same, the filing Party may proceed to file.

3.2.2. If exigent and/or emergency circumstances arise in the Litigation that do not permit the Parties to comply with section 3.2.1 of this Agreement, then the Parties agree to use their best efforts to notify and consult with counsel for the Parties prior to making any Filings.

4. MUTUAL COOPERATION.

4.1. The Parties agree that it is in their mutual interest and in the best interest of the Parties to cooperate with one another on an ongoing basis and make every reasonable effort to further the implementation of the provisions of this Agreement and the intentions of the Parties as reflected by the provisions of this Agreement. Therefore, the Parties agree to take all action reasonably necessary to obtain a turnover of the Clearstream Assets in the Litigation.

4.2. The Parties agree and covenant not to sue or commence any other proceedings with respect to the Clearstream Assets except as provided for by, or in accordance with the terms of, this Agreement.

4.2.1. The Parties further agree and covenant that the Parties will not make any claim, file any document with the Court or take any other action in the Litigation or any other proceeding relating to the Clearstream Assets that challenges or would adversely affect the amount, validity, priority or enforceability of any Creditor Plaintiff's Creditor Judgment against Iran or any other Creditor Plaintiff's right to execute on its Creditor Judgment against the Clearstream Assets.

4.2.2. The Parties further agree and covenant not to sue or commence any other proceedings against any Creditor Plaintiff or counsel for a Creditor Plaintiff with respect to

the Clearstream Assets, including but not limited to any claims relating to distribution of recoveries from the Clearstream Assets, any alleged conflict of interest, attorneys' fees and expenses due to any Creditor Plaintiff or their counsel, and any potential tax liability that may arise from this Agreement with respect to the Clearstream Assets, except for an arbitration under section 7.3 to enforce a Party's rights under this Agreement.

4.2.3. The Parties acknowledge that § 503 of Senate Bill 2101 and House of Representatives Bill 4070 (collectively referred to as "Section 503") do not seek to change the scope of damages available under the Terrorism Risk Insurance Act of 2002 ("TRIA"). Those damages are currently limited to compensatory damages, and TRIA does not provide for awards of punitive damages. The Parties agree and covenant that subject to the execution of this Agreement by all Parties and only for so long as this Agreement is in effect, they will not and that they will not cause or urge anyone to lobby any member of the United States Congress to include any provision in any legislation (including in Section 503 or in any related or similar proposed legislation) that would have the effect of expanding the scope of damages recoverable with respect to the blocked assets that are the subject of this agreement to include punitive damages. The Parties further agree and covenant, subject to execution of this Agreement by all Parties and only for so long as this Agreement is in effect, to support (a) the proposed provisions of Section 503 to promote a uniform national standard amongst the Courts regarding the requirements for service on foreign states and for a § 1610(c) order under the Foreign Sovereign Immunities Act ("FSIA"), (b) the proposed provisions aimed at revising the FSIA to ensure that the Lautenberg Amendment is applicable to actions brought under 28 U.S.C. § 1605(a)(7) and that enforcement actions pursuant to TRIA can be brought to enforce judgments awarded under 28 USC § 1605A and (c) any provision in any legislation (including in Section 503 or in any related or similar proposed legislation) which includes provisions that are not materially different than those provisions described in 4.2.3(a) and 4.2.3(b) above.

5.  REPRESENTATIONS AND WARRANTIES.

As an inducement to enter into this Agreement, each of the undersigned counsel hereby represents and warrants as follows:

5.1.  Authorization and Validity.

(a) The undersigned counsel for the Rubin Plaintiffs and the Levin Plaintiffs represent and acknowledge that they have the authority to negotiate on behalf of all of their respective clients, that counsel is not aware of any legal or ethical limitation on their ability to enter into this Agreement on behalf of their clients, and that by executing this agreement their clients shall be bound by the terms of this Agreement.

(b) The undersigned counsel for the Peterson Plaintiffs Valore Plaintiffs, Murphy Plaintiffs and Bland Plaintiffs (collectively, the "Beirut Bombing Plaintiffs"), the Acosta Plaintiffs, Greenbaum Plaintiffs, Kirschenbaum Plaintiffs, and Beer Plaintiffs (collectively, the "Stroock Plaintiffs"), and the Heiser Plaintiffs represent and acknowledge that they have the authority to negotiate on behalf of all of their respective clients and that counsel is not aware of

any legal or ethical limitation on their ability to enter into this Agreement on behalf of their clients. The undersigned counsel for the Beirut Bombing Plaintiffs, Stroock Plaintiffs and Heiser Plaintiffs further represent that (a) they have the express approval of at least 80% of the individual plaintiffs that comprise their respective Creditor Plaintiff's group to the sharing of the Clearstream Assets contemplated by this Agreement and have received no objections to such sharing, (b) they will recommend that all of their respective clients approve this Agreement, (c) counsel will use best efforts to obtain that approval within the time period specified by this Agreement, and (d) counsel anticipate that such approval will be forthcoming. Counsel for the Beirut Bombing Plaintiffs, Stroock Plaintiffs and Heiser Plaintiffs shall have thirty (30) days from the Effective Date to seek to obtain the approval of this Agreement from each client within such counsel's group. Thirty-one (31) days after the Effective Date, counsel for the Beirut Bombing Plaintiffs, Stroock Plaintiffs and Heiser Plaintiffs shall deliver by electronic mail to counsel for the Beirut Bombing Plaintiffs, Stroock Plaintiffs and Heiser Plaintiffs confirmation that they have (or have not) met the 80% threshold required by this section. If after the expiration of that 30-day period, less than 80% collectively of the Beirut Bombing Plaintiffs group have approved the terms of this Agreement, then the Stroock Plaintiffs and/or the Heiser Plaintiffs may cancel this Agreement by delivering written notice to counsel for all of the Creditor Plaintiffs at the notice addresses set forth in this Agreement no more than 40 days after the Effective Date. If after the expiration of that 30-day period, less than 80% collectively of the Stroock Plaintiffs and/or Heiser Plaintiffs groups have approved the terms of this Agreement, then the Beirut Bombing Plaintiffs may cancel this Agreement by delivering written notice to counsel for all of the Creditor Plaintiffs at the notice addresses set forth in this Agreement no more than 40 days after the Effective Date. Notwithstanding the foregoing, in the event that Section 503 is passed by either the United States Senate, the United States House of Representatives, and/or both the United States Senate and the United States House of Representatives, then, immediately upon such passage of Section 503, (a) this Agreement shall be immediately binding by and among all of the Creditor Plaintiffs including the Beirut Bombing Plaintiffs, Stroock Plaintiffs and the Heiser Plaintiffs including each and every member of such Creditor Plaintiff group regardless of whether any such Creditor Plaintiff groups have or have not achieved such 80% threshold, and (b) no Creditor Plaintiff Groups shall be able to opt-out or otherwise terminate this Agreement. If, however, Section 503 is passed by either the House or the Senate, but is never enacted into law, then the provisions in the foregoing sentence shall become null and void.

Michael Engelberg, Trustee of the American Center for Civil Justice, a New York nonprofit corporation, represents and warrants that the execution and delivery of this Agreement by him, acting as attorney in fact for the Heiser Plaintiffs ("Agent"), has been duly authorized by written power of attorney, and by virtue thereof, this Agreement constitutes the legal, valid and binding obligation of the Heiser Plaintiffs for whom the undersigned is executing this Agreement as attorney in fact. The undersigned Agent has no notice of the termination or revocation of the power of attorney, notice of any facts that the power of attorney has been terminated or revoked, actual notice that the power of attorney has been modified in any way that would affect his ability as agent to execute this Agreement, or notice of any facts that the power of attorney has been so modified.

The undersigned Neal M. Sher, General Counsel for the American Center for Civil Justice and on behalf of Agent, represents and acknowledges that the written power of attorney that Agent has obtained from the Heiser Plaintiffs is valid and counsel has no notice of any termination or revocation of the power of attorney, notice of any facts that the power of attorney has been terminated or revoked, actual notice that the power of attorney has been modified in any way that would affect the ability of the Agent to execute this Agreement, or notice of any facts that the power of attorney has been so modified.

        5.2.    Benefit. The Parties have derived direct or indirect benefit from this Agreement and the transactions contemplated herein.

        5.3.    Arms-Length Agreement. The Parties: (a) have had access to independent legal counsel in the negotiation of the terms of and in the preparation and execution of this Agreement, and they have had the opportunity to review, analyze and discuss with counsel this Agreement and the underlying factual matters relevant to this Agreement for a sufficient period of time before the execution and delivery hereof; (b) all of the terms of this Agreement were negotiated at arm's length; (c) this Agreement was executed without fraud, duress, undue influence or coercion of any kind exerted by any of the Parties; and (d) the execution and delivery of this Agreement is the free and voluntary act of each party.

        5.4.    Amount of Unpaid Compensatory Damages. The amount of each Creditor Plaintiff's unpaid Judgment set forth in R-2. of the Recitals, exclusive of post-judgment interest, is accurate, but if it is overstated as of the Effective Date, the percentages in Section 2.2.1 shall be proportionately reduced.

6.    CONFIDENTIALITY OF AGREEMENT.

        6.1.    The terms of this Agreement are confidential. The Parties to this Agreement shall not disclose the terms of this Agreement to any third party without the prior written approval of all Parties, except for the following purposes:

        6.2.    The Parties may disclose the terms of this Agreement in response to legal process requiring such disclosure. If any Party is served with legal process requiring the disclosure of any settlement terms and/or the production of this Agreement, that Party shall give written notice to the other Parties of the legal process within the later of ten (10) business days following receipt of the legal process or ten (10) business days prior to the date by which disclosure is required.

        6.3.    The Parties may disclose the terms of this Agreement to their attorneys, accountants and/or auditors.

        6.4.    The Parties may disclose the terms of this Agreement in connection with an action to enforce any of the provisions of this Agreement.

        6.5.    Any Party may seek injunctive relief in a court of competent jurisdiction to enforce the provisions of section 6 of this Agreement.

      6.6.    The Parties may disclose the existence of this Agreement to advance their joint efforts in obtaining a turnover of the Clearstream Assets and in furtherance of their joint efforts with regard to effecting the terms contained in section 2 of this Agreement, including but not limited to disclosure of the existence of this Agreement to counsel for other claimants to the Clearstream Assets. The Parties additionally may disclose the terms of this Agreement in connection with obtaining a turnover of the Clearstream Assets, provided that prior to such disclosure, all Parties agree, in writing, to such disclosure.

7.    GENERAL PROVISIONS.

      7.1.    Headings. The headings and subheadings in this Agreement are intended for convenience only and shall not be used or deemed to limit or diminish any of the provisions hereof.

      7.2.    Construction. Unless the context requires otherwise, singular nouns and pronouns used in this Agreement shall be deemed to include the plural, and pronouns of one gender shall be deemed to include the equivalent pronoun of the other gender.

      7.3.    Interpretation and Disputes. The terms of this Agreement and all disputes among the parties arising out of or related to the Agreement shall be governed by, and construed in accordance with, the laws of the State of New York without regard to New York's choice of laws principles. Any dispute arising under or related to this Agreement or with respect to the subject matter of this Agreement shall be submitted to JAMS in New York City for resolution pursuant to the JAMS Comprehensive Arbitration Rules and Procedures in effect at the time of any such dispute. The Parties expressly waive their rights to commence any action concerning any such dispute in any forum, judicial or otherwise, other than JAMS.

      7.4.    Assignment. Except in accordance with the terms of Sections 2.2.6. and 2.2.7. of this Agreement, the Parties may not assign any right or obligation hereunder without the prior written consent of all other Parties. Any attempted assignment or delegation in violation hereof shall be void.

      7.5.    No Waiver. No waiver of any default by a Party shall be deemed to constitute a waiver of any subsequent default with respect to the same or any other provision hereof.

      7.6.    No Other Relationships. Entering into this Agreement does not create between the Parties a joint venture or other legal relationship beyond that expressly stated in this Agreement. Nothing in this Agreement creates any fiduciary or other express or implied duties between one Creditor Plaintiff or its respective counsel and any other Creditor Plaintiff or its respective counsel, other than the duty to comply with the terms of this Agreement. Nothing in this Agreement shall be used as a basis to seek to disqualify counsel of a Creditor Plaintiff from representing such Creditor Plaintiff in this litigation or any future litigation between or among the Creditor Plaintiffs or in any other litigation.

7.7. <u>Survival; Successors and Assigns</u>. Whenever in this Agreement a Party is referred to, such reference shall be deemed to include the successors and assigns of such Party. All covenants, agreements, representations and warranties made herein, and in any documents executed in connection with this Agreement, shall survive this Agreement and continue in full force and effect.

7.8. <u>Modification</u>. No modification of any provision of this Agreement shall be effective unless the same is in writing and signed by counsel for all Creditor Plaintiffs, and then such modification shall be effective only in the specific instance or for the purpose for which given.

7.9. <u>Severability</u>. If any term, provision or condition, or any part thereof, of this Agreement, or any document executed in connection with this Agreement, shall for any reason be found or held to be invalid or unenforceable by any court or governmental agency of competent jurisdiction, such invalidity or unenforceability shall not affect the remainder of such term, provision or condition or any other term, provision or condition, and this Agreement, and all documents executed in connection with this Agreement, shall survive and be construed as if such invalid or unenforceable term, provision or condition had not been contained therein.

7.10. <u>Merger and Integration</u>. This Agreement, and any documents specifically referred to and executed in connection with this Agreement, contain the entire agreement of the Parties hereto with respect to the matters covered and the transactions contemplated herein, and no other agreement, statement or promise made by any Party hereto, or any employee, officer, attorney, agent or other representative of a Party hereto, shall be valid or binding.

7.11. <u>Notice</u>. Any notice required or permitted by or in connection with this Agreement shall be in writing and shall be made by overnight delivery service. Notice shall be directed to the appropriate address set forth below or to such other address as may be hereafter specified by written notice. Notice shall be considered given one (1) calendar day after delivery to the overnight delivery service, independent of the date of actual delivery or whether delivery is ever in fact made, as the case may be, provided the giver of notice can establish that notice was given as provided herein.

If to the Peterson Plaintiffs

Liviu Vogel
Salon Marrow Dyckman Newman & Broudy LLP
292 Madison Avenue
New York, New York 10017
Email: l.Vogel@salonmarrow.com

-11-

|  |  |
|---|---|
|  | Thomas Fortune Fay<br>Fay Kaplan Law, P.A.<br>777 Sixth Street N.W., Suite 410<br>Washington, DC 20001-2752<br>Email: thomasfay@aol.com |
|  | Annie P. Kaplan<br>Fay Kaplan Law, P.A.<br>777 Sixth Street N.W., Suite 410<br>Washington, DC 20001<br>Email: annie.kaplan@gmail.com |
|  | Steven R. Perles<br>Perles Law Firm<br>1146 19th Street, 5th Floor<br>Washington, DC 20036<br>Email: sperles@perleslaw.com |
|  | James P. Bonner<br>Stone Bonner & Rocco LLP<br>260 Madison Avenue<br>17th Floor<br>New York, New York 10016-2401<br>Email: jbonner@lawssb.com |
| If to the Greenbaum, Acosta, Beer and Kirschenbaum Plaintiffs | Curtis C. Mechling<br>James L. Bernard<br>Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, New York 10038<br>Email: cmechling@stroock.com |
| If to the Heiser Plaintiffs | Richard M. Kremen<br>Dale K. Cathell<br>DLA Piper LLP (US)<br>6225 Smith Avenue<br>Baltimore, Maryland 21209<br>Email: richard.kremen@dlapiper.com |
| If to the Valore Plaintiffs | Keith M. Fleischman<br>Fleischman Law Firm<br>565 Fifth Avenue, Seventh Floor<br>New York, New York 10017<br>Email: keith@fleischmanlawfirm.com |

|  |  |
|---|---|
|  | Patrick Michael Donahue<br>18 West Street<br>Annapolis, Maryland 21401<br>pmd@thedonahuelawfirm.com |
| If to the Levin Plaintiffs | Suzelle M. Smith<br>Howarth & Smith<br>523 West Sixth Street<br>Suite 728<br>Los Angeles, California 90014<br>Email: SSmith@howarth-smith.com |
| If to the Murphy Plaintiffs | John W. Karr<br>Karr & Allison, P.C.<br>1250 Connecticut Avenue, N.W., Second Floor<br>Washington, DC 20036<br>Email: jwkarr@msn.com |
| If to the Bland Plaintiffs | Noel J. Nudelman<br>Heideman Nudelman & Kalik, P.C.<br>1146 19th Sreet, NW Fifth Floor<br>Washington, DC 20036<br>njnudelman@hnklaw.com |
| If to the Rubin Plaintiffs | Robert J. Tolchin<br>The Berkman Law Office, LLC<br>111 Livingston Street, No. 1928<br>Brooklyn, New York 11201<br>Email: rjt.berkman@gmail.com |

7.12. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement. Facsimile and PDF signatures shall be treated as original signatures.

7.13. <u>Binding Effect</u>. This Agreement shall have no effect unless and until it has been executed by all Parties hereto.

7.14. <u>Further Assurances</u>. The Parties agree to do all things necessary and to execute all further documents necessary and appropriate to carry out and effectuate the terms and purposes of this Agreement.

7.15 <u>Undertakings of Counsel</u>. By signing this Agreement, the undersigned counsel agree to and undertake the obligations of counsel set forth in Sections 2, 3, 4, 5.1, 6 and 7 of this Agreement.

-13-

8.   Time of Essence. Time is of the essence of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed or caused to be executed this Agreement under seal as of the day and year first written above.

SALON MARROW DYCKMAN NEWMAN & BROUDY LLP

By: _____
       LIVIU VOGEL

*On behalf of the Peterson Plaintiffs and for Salon Marrow Dyckman Newman & Broudy LLP*

FAY & PERLES

By: _____
       THOMAS FORTUNE FAY

*On behalf of the Peterson Plaintiffs and for Thomas Fortune Fay*

STEVEN R. PERLES

By: _____
       STEVEN R. PERLES

*On behalf of the Peterson Plaintiffs and for Steven R. Perles*

STROOCK & STROOCK & LAVAN LLP

By: _____
       CURTIS C. MECHLING

*On behalf of the Greenbaum, Acosta, Beer and Kirschenbaum Plaintiffs and for Stroock & Stroock & Lavan LLP*

STONE BONNER & ROCCO LLP

By: _____
       JAMES P. BONNER

*On behalf of the Peterson Plaintiffs and for Stone Bonner & Rocco LLP*

HEIDEMAN NUDELMAN & KALIK, P.C.

By: _____
       NOEL J. NUDELMAN

*On behalf of the Bland Plaintiffs and for Heideman Nudelman & Kalik, P.C..*

-14-

8. **Time of Essence.** Time is of the essence of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed or caused to be executed this Agreement under seal as of the day and year first written above.

SALON MARROW DYCKMAN NEWMAN & BROUDY LLP

By:_____
        LIVIU VOGEL

*On behalf of the Peterson Plaintiffs and for Salon Marrow Dyckman Newman & Broudy LLP*

FAY & PERLES

By:_____
        THOMAS FORTUNE FAY

*On behalf of the Peterson Plaintiffs and for Thomas Fortune Fay*

STEVEN R. PERLES

By:_____
        STEVEN R. PERLES

*On behalf of the Peterson Plaintiffs and for Steven R. Perles*

STROOCK & STROOCK & LAVAN LLP

By:_____
        CURTIS C. MECHLING

*On behalf of the Greenbaum, Acosta, Beer and Kirschenbaum Plaintiffs and for Stroock & Stroock & Lavan LLP*

STONE BONNER & ROCCO LLP

By:_____
        JAMES P. BONNER

*On behalf of the Peterson Plaintiffs and for Stone Bonner & Rocco LLP*

HEIDEMAN NUDELMAN & KALIK, P.C.

By:_____
        NOEL J. NUDELMAN

*On behalf of the Bland Plaintiffs and for Heideman Nudelman & Kalik, P.C..*

-14-

MICHAEL ENGELBERG

By: *[signature]*
    MICHAEL ENGELBERG

*As Attorney in Fact on behalf of the Heiser Plaintiffs and for the American Center for Civil Justice, A New York Nonprofit Corporation*

NEAL M. SHER

By: *[signature]*
    NEAL M. SHER

*General Counsel for the American Center for Civil Justice, A New York Nonprofit Corporation and On behalf of Agent*

HOWARTH & SMITH

By:_____
    SUZELLE M. SMITH

*On behalf of the Levin Plaintiffs and for Howarth & Smith*

THE FLEISCHMAN LAW FIRM

By:_____
    KEITH M. FLEISCHMAN

*On behalf of the Valore Plaintiffs and for the Fleischman Law Firm*

KARR & ALLISON, P.C.

By:_____
    JOHN W. KARR

*On behalf of the Murphy Plaintiffs and for Karr & Allison, P.C.*

THE BERKMAN LAW OFFICE, LLC

By:_____
    ROBERT J. TOLCHIN

*On behalf of the Rubin Plaintiffs and for The Berkman Law Office, LLC*

-15-

MICHAEL ENGELBERG

By:_____
    MICHAEL ENGELBERG

*As Attorney in Fact on behalf of the Heiser Plaintiffs and for the American Center for Civil Justice, A New York Nonprofit Corporation*

NEAL M. SHER

By:_____
    NEAL M. SHER

*General Counsel for the American Center for Civil Justice, A New York Nonprofit Corporation and On behalf of Agent*

HOWARTH & SMITH

By:_____
    SUZELLE M. SMITH

*On behalf of the Levin Plaintiffs and for Howarth & Smith*

THE FLEISCHMAN LAW FIRM

By: /s/ Keith Fleischman
    KEITH M. FLEISCHMAN

*On behalf of the Valore Plaintiffs and for the Fleischman Law Firm*

KARR & ALLISON, P.C.

By: /s/ John W. Karr
    JOHN W. KARR

*On behalf of the Murphy Plaintiffs and for Karr & Allison, P.C.*

THE BERKMAN LAW OFFICE, LLC

By:_____
    ROBERT J. TOLCHIN

*On behalf of the Rubin Plaintiffs and for The Berkman Law Office, LLC*

| | |
|---|---|
| MICHAEL ENGELBERG | NEAL M. SHER |
| By:_____<br>MICHAEL ENGELBERG | By:_____<br>NEAL M. SHER |
| *As Attorney in Fact on behalf of the Heiser Plaintiffs and for the American Center for Civil Justice, A New York Nonprofit Corporation* | *General Counsel for the American Center for Civil Justice, A New York Nonprofit Corporation and On behalf of Agent* |
| HOWARTH & SMITH | THE FLEISCHMAN LAW FIRM |
| By: /s/ Suzelle M. Smith<br>SUZELLE M. SMITH | By:_____<br>KEITH M. FLEISCHMAN |
| *On behalf of the Levin Plaintiffs and for Howarth & Smith* | *On behalf of the Valore Plaintiffs and for the Fleischman Law Firm* |
| KARR & ALLISON, P.C. | THE BERKMAN LAW OFFICE, LLC |
| By:_____<br>JOHN W. KARR | By:_____<br>ROBERT J. TOLCHIN |
| *On behalf of the Murphy Plaintiffs and for Karr & Allison, P.C.* | *On behalf of the Rubin Plaintiffs and for The Berkman Law Office, LLC* |

-15-

| | |
|---|---|
| MICHAEL ENGELBERG | NEAL M. SHER |
| By:_____<br>MICHAEL ENGELBERG | By:_____<br>NEAL M. SHER |
| *As Attorney in Fact on behalf of the Heiser Plaintiffs and for the American Center for Civil Justice, A New York Nonprofit Corporation* | *General Counsel for the American Center for Civil Justice, A New York Nonprofit Corporation and On behalf of Agent* |
| HOWARTH & SMITH | THE FLEISCHMAN LAW FIRM |
| By:_____<br>SUZELLE M. SMITH | By:_____<br>KEITH M. FLEISCHMAN |
| *On behalf of the Levin Plaintiffs and for Howarth & Smith* | *On behalf of the Valore Plaintiffs and for the Fleischman Law Firm* |
| KARR & ALLISON, P.C. | THE BERKMAN LAW OFFICE, LLC |
| By:_____<br>JOHN W. KARR | By: /s/ Robert J. Tolchin<br>ROBERT J. TOLCHIN |
| *On behalf of the Murphy Plaintiffs and for Karr & Allison, P.C.* | *On behalf of the Rubin Plaintiffs and for The Berkman Law Office, LLC* |