# Exhibit 7

**FOX ROTHSCHILD LLP**
PETER C. BUCKLEY, ESQUIRE
2000 MARKET STREET, 20TH FLOOR
PHILADELPHIA, PENNSYLVANIA 19103
TEL: (215) 299-2854
FAX: (215) 299-2150
E-MAIL: pbuckley@foxrothschild.com
*Attorney for Claimants*

Allen L. Rothenberg, Esquire,
The Law Firm of Allen L. Rothenberg, and
The Rothenberg Law Firm LLP,

                         Claimants,

        v.

Thomas Fortune Fay, Esquire,
Fay Law Group, P.A.,
Steven R. Perles, Esquire,
Perles Law Firm P.C., and
Fay and Perles FSIA Litigation Partnership,

                     Respondents.

**DEMAND FOR ARBITRATION**

To:

    Thomas Fortune Fay, Esquire        Fay Law Group, P.A.
    777 6th Street NW #410           777 6th Street NW #410
    Washington, DC 20001            Washington, DC 20001

    Steven R. Perles, Esquire          Perles Law Firm P.C.
    816 Connecticut Ave., NW       816 Connecticut Ave., NW
    12th Floor                       12th Floor
    Washington, DC 20036            Washington, DC 20036

    Fay and Perles FSIA Litigation Partnership
    c/o Thomas Fortune Fay and Steven R. Perles, Esquires

## DEMAND FOR ARBITRATION

Claimants Allen L. Rothenberg, Esquire, The Law Firm of Allen L. Rothenberg and The Rothenberg Law Firm LLP (collectively, "Rothenberg" or "Claimants") hereby demand arbitration against Respondents Thomas Fortune Fay, Esquire and Fay Law Group, P.A. (collectively, "Fay"), Steven R. Perles, Esquire and Perles Law Firm P.C. (collectively, "Perles"), and Fay and Perles FSIA Litigation Partnership (the "Partnership") (collectively, "Respondents," and, together with Claimants, the "Parties").

In Section II of the December 4, 2018 Arbitration Agreement attached as "Exhibit A," the Parties agreed: (a) to "neutral, binding arbitration at JAMS pursuant to the JAMS Arbitration Administrative Policies and the JAMS Comprehensive Arbitration Rules and Procedures," (b) to employ the "Expedited Procedures set forth in Rules 16.1 and 16.2 of the JAMS Comprehensive Arbitration Rules and Procedures," and (c) to "select Judge Stephen Crane as the arbitrator." See Arbitration Agreement at p. 2 (Ex. A).

In support of this demand, Rothenberg alleges as follows:

### Working Together, The Parties Obtain A $2.6 Billion Default Judgment Against Iran In The Peterson Action

1.      In and around 2000, pursuant to an oral agreement whereby each attorney would be entitled to one-third of the net attorneys' fee on all cases, Rothenberg, Fay and Perles began working together to identify victims, establish attorney-client relationships and bring actions against the Islamic Republic of Iran relating to the October 23, 1983 terrorist bombing of the United States Marine Corps barracks in Beirut, Lebanon.

2.      Their collective effort resulted in an action against Iran filed in 2001 by victims of the terrorist attack: Peterson et al. v. Islamic Republic of Iran, No. 01-2094 (D.D.C.) (the "Peterson Action").

3.      After finding that the Islamic Republic of Iran was legally responsible for providing

2

financial and logistical support to the terrorists who carried out the Beirut attack, on September 7, 2007, the Court in the Peterson Action entered a default judgment in favor of the plaintiffs (the "Peterson Plaintiffs") and against Iran for $2,656,944,877 (the "Peterson Judgment").

### The Parties Resolve A Disagreement Over Legal Fees With The Co-Counsel Agreement

4.      After filing the Peterson Action, Fay and Perles began using the platform that the Peterson Action had provided to recruit additional Beirut plaintiffs, on whose behalf they and other attorneys with whom they were associated filed the following actions: Valore et al. v. Islamic Republic of Iran, No. 03-1959 (D.D.C.) (the "Valore Action), Estate of Bland et al. v. Islamic Republic of Iran, No. 05-2124 (D.D.C.) (the "Bland Action"), and Murphy et al. v. Islamic Republic of Iran, No. 06-596 (D.D.C.) (the "Murphy Action").

5.      After Rothenberg became aware of the fact of Respondents' separate efforts (albeit not the entire scope), he confronted Fay and Perles to discuss their oral agreement to pursue claims against Iran collectively.

6.      Later, Fay and Perles indicated that they would no longer recruit additional Beirut plaintiffs; at Respondents' request, the Parties orally agreed not to take on additional plaintiffs seeking to pursue recovery related to the Beirut bombings.

7.      In reliance on Respondents' request and the Parties' oral agreement not to take on additional Beirut plaintiffs, Rothenberg stopped his successful effort to recruit Beirut plaintiffs and, following that agreement, Rothenberg did not recruit any more plaintiffs seeking to pursue recovery related to the Beirut bombings.

8.      Prior to entry of the $2.6 billion Peterson Judgment, Respondents disputed Rothenberg's entitlement to one-third of the net attorneys' fees attributable to all plaintiffs in the Peterson Action, claiming that Rothenberg was entitled to a fee only for a subset of plaintiffs that

he recruited.

9.      Meanwhile, contrary to the Parties' agreement, Respondents continued to take on additional Beirut plaintiffs, filing another action on July 23, 2007: <u>Davis v. Islamic Republic of Iran</u>, No. 07-1302 (D.D.C.) (the "Davis Action").

10.     Several months later, the Parties resolved their dispute over the fees associated with the Peterson Action in a letter agreement signed by Rothenberg and counter-signed by Fay and Perles on November 28, 2007 (the "Co-Counsel Agreement"); a copy of the Co-Counsel Agreement is attached as "Exhibit B."

11.     In the Co-Counsel Agreement, Fay, Perles and Rothenberg agreed that, "as co-counsel, each of our respective firms is to receive one-third of the net attorneys' fee achieved in this matter from all claims on behalf of the 101 servicemen or their estates as named in the attached list compiled by [Fay];" the agreement continued, "each of our three firms is also to receive one-third of the net attorneys' fee resulting from damages awarded in this matter at any time to any of the listed servicemen's family members or those family members' estates." <u>See</u> Co-Counsel Agreement (Ex. B).

12.     As with any contract, the Co-Counsel Agreement carried an implied covenant of good faith and fair dealing; as relevant here, that included an implied covenant not to take action to impair the rights of the other parties to the agreement.

13.     At the time of the Co-Counsel Agreement, Rothenberg was not aware that Respondents had failed to abide by the agreement not to take on additional Beirut plaintiffs, which Respondents had requested.

### **Respondents Quietly Take On More "Follow On" Plaintiffs And Later Sign A Secret Sharing Agreement Between Them And The Peterson Plaintiffs, Enriching Themselves At Rothenberg's Expense**

14.     In the years that followed, while Rothenberg kept his promise to Fay and Perles and

did not recruit any more Beirut plaintiffs, Respondents quietly continued taking on additional Beirut plaintiffs, commencing several more "follow-on" actions: (a) <u>Anderson et al. v. Islamic Republic of Iran</u>, No. 08-535 (D.D.C.) (the "Anderson Action"), (b) <u>Fain et al. v. Islamic Republic of Iran</u>, No. 10-628 (D.D.C.) (the "Fain Action"), and (c) <u>Taylor et al. v. Islamic Republic of Iran</u>, No. 10-844 (D.D.C.) (the "Taylor Action").[1]

15.    Even when they did not serve as counsel of record, Respondents found a way to negotiate referral fee arrangements with other attorneys who had filed "follow-on" claims on behalf of Beirut plaintiffs, including the attorneys in: (a) <u>O'Brien et al. v. Islamic Republic of Iran</u>, No. 06-690 (D.D.C.) (the "O'Brien Action"), and (b) <u>Brown et al. v. Islamic Republic of Iran</u>, No. 08-531 (D.D.C.) (the "Brown Action") (collectively, the Valore, Bland, Murphy, Davis, Anderson, Fain, Taylor, O'Brien, and Brown Actions are referred to as the "Follow-On Actions" and the plaintiffs in the Follow-On Actions are referred to as the "Follow-On Plaintiffs").[2]

16.    On June 8, 2010, after locating $1.68 billion in Iranian assets held by Citibank in New York (the "Clearstream Assets"), the Peterson Plaintiffs (as judgment creditors) filed a turnover action in the United States District Court for the Southern District of New York: <u>Peterson et al v. Islamic Republic of Iran</u>, No. 10-4518 (the "Turnover Action").

17.    Later, without informing Rothenberg, Respondents signed a February 21, 2012 Agreement (the "Follow-On Agreement") purportedly between the Peterson Plaintiffs and the Follow-On Plaintiffs whereby each plaintiff group agreed not to contest the other's claim to recovery from the Turnover Action and to share *pro rata* (on the basis of the amount of each

---

[1] These post-Peterson actions became known as the "follow-on" actions because they "followed on" the Peterson Action using it as a blueprint to obtain judgments against Iran.

[2] It is unclear whether Respondents negotiated these referral fee arrangements at the outset of the O'Brien and Brown Actions or, rather, at the time of the Follow-On Agreement as the "price of admission," discussed below.

judgment) in any recovery regardless of its source; a copy of the Follow-On Agreement is attached as "Exhibit C."

18.     This *pro rata* sharing agreement diluted Rothenberg's attorneys' fees under the Co-Counsel Agreement by reducing the Peterson Plaintiffs' recovery; however, Respondents benefitted from the agreement because the agreement involved a sharing of that recovery with the Follow-On Plaintiffs, for whom Respondents claimed a greater share of attorneys' fees.

19.     At that time, of the Follow-On Plaintiffs, only the plaintiffs in the Valore, Murphy, and Bland Actions had secured judgments against Iran.

20.     Through the Follow-On Agreement, the Peterson Plaintiffs and the Follow-On Plaintiffs purportedly authorized Fay and Perles "to enter into such further agreements with other groups holding judgments which have issued execution with respect to the assets which are the subject of [the Turnover Action]"—despite the fact that, at the time of the Follow-On Agreement, the Follow-On Plaintiffs in the Davis, Anderson, Fain, Taylor, O'Brien and Brown Actions had not yet obtained judgments. See Follow-On Agreement at Section 6 (Ex. C).

21.     The Follow-On Agreement went on to threaten that "any dissenters to this agreement in each participating creditor group … may retain their own counsel and proceed accordingly." See id. at 7 (Ex. C).

22.     Respondents purportedly wrote to the Peterson Plaintiffs on February 10, 2012 to secure their informed consent to the Follow-On Agreement; however, in view of the number of Peterson Plaintiffs (some of whom had passed away without clearly designating a representative to make decisions with respect to the litigation), it is unlikely that Respondents obtained informed consent from all of the Peterson Plaintiffs by the time that Respondents signed the Follow-On Agreement on February 21, 2012—eleven days later.

23.     Knowing that Rothenberg would be concerned about the dilutive impact of the

Follow-On Agreement on the Peterson Plaintiffs' recovery as well as his attorney's fee under the Co-Counsel Agreement, Respondents did not disclose the Follow-On Agreement to Rothenberg.

24.    When other groups of Beirut victims refused to pay tribute to Respondents with a referral fee, Respondents excluded them from the Follow-On Agreement and the sharing arrangement they had promoted under the slogan "Marines share with Marines."

25.    In June 2012, Respondents signed another sharing arrangement with creditors holding judgments against Iran; knowing that their actions with respect to the Follow-On Agreement had harmed Rothenberg, Respondents did not mention or include the plaintiffs in the Davis, Anderson, Fain, Taylor, O'Brien and Brown Actions in that agreement.

26.    In view of the limited fund available to satisfy the Peterson Judgment, the Follow-On Agreement substantially reduced Rothenberg's attorneys' fee under the Co-Counsel Agreement, in turn, substantially increasing Respondents' attorneys' fee by diluting the Peterson Plaintiffs' claim to the Clearstream Assets with claims from the Follow-On Plaintiffs—for whom Respondents claimed a greater share of attorneys' fees.

27.    Months earlier, prior to the Follow-On Agreement, Perles had written to Fay that they had created "a real mess," exposing Respondents to liability for "fee dilution" through the redistribution of fee income from plaintiffs for whom Respondents received a lesser percentage to plaintiffs for whom Respondents' percentage was greater.

28.    If Respondents had disclosed the Follow-On Agreement to Rothenberg, the Parties could have negated its impact on Rothenberg's right to fees under the Co-Counsel Agreement; however, Respondents concealed the Follow-On Agreement because they stood to benefit substantially from the "fee dilution" it caused.

29.    Through their actions with respect to the Follow-On Agreement, Respondents unjustly enriched themselves at Rothenberg's expense and violated the covenant of good faith and

fair dealing implicit in the Co-Counsel Agreement.

### As A Result Of The Follow-On Agreement And Other Actions, Rothenberg Has Received Far Less and Respondents Have Received Far More Under The Co-Counsel Agreement

30.    The Turnover Action has resulted in the distribution of the Clearstream Assets for the benefit of the Peterson Plaintiffs, the Follow-On Plaintiffs and other creditors holding judgments against Iran; hundreds of millions of dollars have been paid both to the victims of terrorism and the attorneys who conceived these novel actions, organized the plaintiff groups, and represented their interests for more than two decades.

31.    Through the efforts of the Parties and other attorneys, these plaintiffs are continuing to pursue enforcement of their judgments against Iran and there may be yet additional recoveries in the future; however, the Peterson Plaintiffs are still far from ever fully satisfying their claims, having recovered less than 40% of the total compensatory judgments to date.

32.    For his part, Rothenberg received attorneys' fees from the Turnover Action and he will receive attorneys' fees from any additional recovery; yet, Rothenberg's attorneys' fees under the Co-Counsel Agreement have been significantly reduced and Respondents' attorneys' fees have been significantly increased as a result of the Follow-On Agreement—a sharing agreement quietly put in place by Respondents that benefitted themselves at Rothenberg's expense.

33.    As parties to the Co-Counsel Agreement, Respondents owed Rothenberg an implied duty of good faith and fair dealing not to take action to impair Rothenberg's rights under that agreement—especially action that would benefit Respondents at Rothenberg's expense.

34.    By entering into the Follow-On Agreement, Respondents took action that substantially reduced Rothenberg's attorneys' fees under the Co-Counsel Agreement—action that violated their implied duty of good faith and fair dealing just as surely as if they had entered another agreement that eliminated Rothenberg's attorneys' fees altogether.

35.     Perles and the Partnership further breached the Co-Counsel Agreement and enriched themselves at Rothenberg's expense when they recovered from certain of the attorneys in the Follow-On Actions for harm to their attorneys' fees in the Peterson Action, but failed to account to Rothenberg under the Co-Counsel Agreement.

36.     At present, Rothenberg's damages exceed $20 million; those damages will only continue to grow as Respondents receive a disproportionate share of the attorneys' fees from future recoveries as a result of the Follow-On Agreement.

### COUNT I
### BREACH OF CONTRACT

37.     Rothenberg incorporates by reference the preceding paragraphs of this Demand.

38.     The Co-Counsel Agreement is a valid and enforceable contract between the Parties.

39.     Respondents breached the implied covenant of good faith and fair dealing with respect to the Co-Counsel Agreement by agreeing on behalf of the Peterson Plaintiffs and the Follow-On Plaintiffs to a sharing arrangement that significantly increased their attorneys' fees at Rothenberg's expense—the "fee dilution" about which Perles had been concerned.

40.     Perles and the Partnership further breached the Co-Counsel Agreement and enriched themselves at Rothenberg's expense when they recovered from certain of the attorneys in the Follow-On Actions for harm to their attorneys' fees in the Peterson Action, but failed to account to Rothenberg under the Co-Counsel Agreement.

41.     Respondents' breaches have harmed Rothenberg with damages in excess of $20 million as of this Demand and future damages to occur when and if there are attorneys' fees from additional recoveries on behalf of the Peterson Plaintiffs.

WHEREFORE, Rothenberg demands an award in his favor and against Respondents in an amount to be determined at the time of the award but presently in excess of $20 million, together

with an award of attorneys' fees and the costs of this arbitration proceeding.

## COUNT II
## DECLARATORY JUDGMENT

42.    Rothenberg incorporates by reference the preceding paragraphs of this Demand.

43.    The Co-Counsel Agreement is a valid and enforceable contract between the Parties.

44.    The Parties have a dispute over the division of future attorneys' fees under the Co-Counsel Agreement as a result of Respondents' actions as set forth herein.

45.    Rothenberg is entitled to a declaratory judgment setting forth his entitlement to future attorneys' fees from under the Co-Counsel Agreement sufficient to remedy the dilution and other damages caused by Respondents' improper actions.

WHEREFORE, Rothenberg demands a declaratory judgment as set forth herein, together with an award of attorneys' fees and the costs of this arbitration proceeding.

## COUNT III
## UNJUST ENRICHMENT

46.    Rothenberg incorporates by reference the preceding paragraphs of this Demand.

47.    Respondents have been enriched at Rothenberg's expense as a result of their actions as set forth herein.

48.    It would be against equity and good conscience to permit Respondents to retain these benefits under the circumstances.

WHEREFORE, Rothenberg demands an award in his favor and against Respondents in an amount to be determined at the time of the award but presently in excess of $20 million, together with an award of attorneys' fees and the costs of this arbitration proceeding.

_Peter C. Buckley_

_____

Peter C. Buckley, Esquire
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103
Tel: (215) 299-2854
Fax: (215) 299-2150
pbuckley@foxrothschild.com
*Attorney for Claimants*

September 14, 2021

# Exhibit A

***EXECUTION VERSION***

## ARBITRATION AGREEMENT

This Arbitration Agreement ("Agreement") is made and effective as of the 4th day of December, 2017 (the "Effective Date") by and between:

A.    Allen L. Rothenberg, Esquire, The Law Firm of Allen L. Rothenberg, The Rothenberg Law Firm LLP for themselves and for and their respective partners, members, shareholders, predecessors, successors, assigns and affiliates (collectively, "Rothenberg"); and

B.    Thomas Fortune Fay, Esquire and Fay Law Group, P.A. (collectively, "Fay"), Steven R. Perles, Esquire and Perles Law Firm, P.C. (collectively, "Perles"), the Fay and Perles FSIA Litigation Partnership (the "Partnership"), Anthony LaSpada, Esquire ("LaSpada") for themselves and their respective partners, members, shareholders, predecessors, successors, assigns and affiliates (collectively, with Fay, Perles, the Partnership, and LaSpada, the "Fay, Perles & LaSpada Parties").

Hereinafter, each of the foregoing shall be referred to individually as a "Party" and collectively as the "Parties."

## RECITALS

A.    A dispute (the "Fee Dispute") has arisen among the Parties relating to the attorneys' fees and litigation expenses in Peterson v. Islamic Republic of Iran, No. 10-4518 (S.D.N.Y.) and Nos. 01-2094 and 01-2684 (D.D.C.), Valore v. Islamic Republic of Iran, Nos. 03-1959, 06-516, 06-750 and 08-1273 (D.D.C.), Murphy v. Islamic Republic of Iran, No. 06-596 (D.D.C.), and Estate of Bland v. Islamic Republic of Iran, No. 05-2124 (D.D.C.) (collectively, the "Beirut Marine Cases"). The Fee Dispute is over whether Rothenberg is entitled to compensation from Fay and Perles caused by and/or related to sharing agreements between the plaintiffs and/or their attorneys in the Beirut Marine Cases (the "Beirut Marine Plaintiffs") and Marine victim and family plaintiffs (not represented by Rothenberg) and/or their attorneys in other actions against the Islamic Republic of Iran (collectively, with the Beirut Marine Plaintiffs, the "Marine Plaintiffs").

B.    Rothenberg and the Fay, Perles & LaSpada Parties are named as respondents in Cook v. Fay et al., No. 1100084466 (JAMS) (the "Cook Arbitration").

C.    A dispute has arisen between Rothenberg and the Fay, Perles & LaSpada Parties relating to the apportionment of liability, if any, among the Parties in the Cook Arbitration (the "Apportionment Dispute").

D.    The Parties have agreed to submit the Fee Dispute to binding arbitration with JAMS and to resolve the Apportionment Dispute on the terms set forth herein.

NOW, THEREFORE, in consideration of the above recitals and the mutual promises set forth herein, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, and intending to be legally bound, the Parties covenant and agree as follows:

*** EXECUTION VERSION***

## I.     **RECITALS.**

The recitals set forth above form an integral and substantive part of this Agreement and are incorporated herein.

## II.    **AGREEMENT TO ARBITRATE**

A.     The Parties stipulate and agree to submit the Fee Dispute and any disputes arising out of this Agreement to neutral, binding arbitration at JAMS pursuant to the JAMS Arbitration Administrative Policies and the JAMS Comprehensive Arbitration Rules & Procedures. Unless otherwise agreed in a writing signed by all of the Parties, the Fee Dispute and any disputes arising out of this Agreement shall be the only claims arbitrated under this Agreement.

B.     The Parties stipulate and agree that the Expedited Procedures set forth in Rules 16.1 and 16.2 of the JAMS Comprehensive Arbitration Rules & Procedures shall be employed.

C.     The Parties agree to give up any rights they might possess to have the Fee Dispute litigated in a court or jury trial, and each Party irrevocably consents to JAMS's exclusive jurisdiction over the Fee Dispute.

D.     The Parties agree to select Judge Stephen Crane as the arbitrator; however, in the event that Arbitrator Crane cannot serve, the Parties agree to cooperate in good faith on the selection of an arbitrator from the JAMS Panel. In the event that the Parties arc unable to agree on an arbitrator within 20 days of a demand for arbitration, the Parties shall select a single neutral arbitrator in accordance with Rule 15 of the JAMS Comprehensive Arbitration Rules & Procedures.

E.     The Parties agree that no party may have ex-parte communications with the Arbitrator. Any necessary communication with the Arbitrator must be initiated through the case manager.

F.     The Parties agree that Rothenberg shall be responsible for 50% of the expenses of the arbitration, and that the Fay, Perles & LaSpada Parties shall be responsible for 50% of the expenses of the arbitration.

G.     The Parties agree to defer presentation and resolution of the Fee Dispute until Judge Crane issues a final decision in the Cook Arbitration or until the Cook Arbitration otherwise reaches a final resolution, whichever comes first. Thereafter, Rothenberg may commence an arbitration pursuant to this Agreement in accordance with the JAMS Comprehensive Arbitration Rules & Procedures. None of the Parties other than Rothenberg shall have the right to commence an arbitration or any other action concerning the claims at issue in the Fee Dispute. The Parties agree to waive any defense predicated upon the passage of time; provided, however, that Rothenberg must commence an arbitration, if he so chooses, within thirty six (36) months from the earlier of a Cook Judgment or a Cook Settlement.

H.     The Parties shall not raise any substantive issue relating to the Fee Dispute with the Special Master or the Trustee or in any forum other than the JAMS arbitration contemplated by this Agreement.

2

*** EXECUTION VERSION***

## III.    SATISFACTION AND SECURITY

A.    The Parties shall not object to the Special Master paying unpaid fees and expenses to any Party to this Agreement in accordance with the schedule attached as "Exhibit A" (the "Schedule"), except to the extent of any mathematical or computation errors.

B.    Fay and Perles shall each be severally liable for 50% of any award against the Partnership in the arbitration contemplated by this Agreement.

## IV.    APPORTIONMENT OF LIABILITY TO COOK, IF ANY

The Parties deny that they have any liability to Cook.  Notwithstanding, if Cook obtains a monetary judgment against any or all of the Parties (a "Cook Judgment") or if the Parties agree to a global settlement with Cook requiring the payment of funds to Cook (a "Cook Settlement"), the Parties agree to allocate liability and responsibility as follows:

A.    Rothenberg shall be liable for the percentage of the Cook Judgment or Cook Settlement calculated using the following formula (the "Rothenberg Percentage"): total net attorneys' fees paid to Rothenberg on all Marine Plaintiffs' cases divided by (total net attorneys' fees paid on all Marine Plaintiffs' cases minus total net attorneys' fees paid on all Marine Plaintiffs' cases to damages and collection attorneys other than Cook).  In other words:

| Total Net Attorneys' Fees Paid To Rothenberg on All Marine Plaintiffs' Cases _____ (Total Net Attorneys' Fees Paid on All Marine Plaintiffs' Cases – Total Net Attorneys' Fees Paid to Damages and Collection Attorneys Other than Cook) | = Rothenberg Percentage |
| --- | --- |

Any such liability to Cook shall be satisfied first from funds otherwise owed to Rothenberg from the QSF to the extent that such funds remain.  Rothenberg shall indemnify, defend and hold harmless the Fay, Perles & LaSpada Parties for any liability (including attorneys' fees) arising out of or related to Rothenberg's failure to satisfy his liability to Cook as set forth herein.

B.    The Fay, Perles & LaSpada Parties shall be jointly and severally liable for the percentage of the Cook Judgment or the Cook Settlement calculated using the following formula (the "Fay, Perles & LaSpada Percentage"): 100% minus Rothenberg Percentage.  In other words:

| 100% - Rothenberg Percentage | = Fay, Perles & LaSpada Percentage |
| --- | --- |

Any such liability to Cook shall be satisfied first from funds otherwise owed to the Fay, Perles & LaSpada parties from the QSF to the extent that such funds remain.  The Fay, Perles & LaSpada

3

*** EXECUTION VERSION***

Parties shall indemnify, defend and hold harmless Rothenberg for any liability (including attorneys' fees) arising out of or related to the Fay, Perles & LaSpada Parties' failure to satisfy their liability to Cook as set forth herein.

      C.      The Rothenberg Percentage and the Fay, Perles & LaSpada Percentage shall be calculated as of the date of the Cook Judgment or Cook Settlement. To the extent that subsequent distributions from the QSF, any award in the arbitration contemplated by this Agreement, or any other collection effort on behalf of the Marine Plaintiffs' impact either calculation, within thirty (30) days of receipt of such additional funds, the Parties shall account to one another as necessary to allocate liability in accordance with the revised calculations.

      D.      If the Parties recover any funds from Cook, they shall apportion the recovery pro rata in accordance with the Rothenberg Percentage and the Fay, Perles & LaSpada Percentage as set forth above.

## V.     AUTHORITY OF PARTIES

The Parties warrant that they have not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations or causes of action referred to in this Agreement. Each Party warrants that the person executing this Agreement on its behalf is fully authorized and empowered to bind the respective party. The Parties acknowledge that they are not executing this Agreement on behalf of any client, whose rights remain unaffected by this Agreement.

## VI.    NO ADMISSION OF LIABILITY

This Agreement is not, nor shall it be construed as, an admission of liability or wrongdoing on the part of any of the Parties.

## VII.   REPRESENTATION OF COMPREHENSION OF DOCUMENT

The Parties hereby acknowledge that they have read this Agreement and that they have discussed the terms of this Agreement with legal counsel of their choosing.

## VIII.  FURTHER ASSURANCES

The Parties hereto agree promptly to execute any further and additional documents and to take all further steps necessary to effectuate the terms and intent of this Agreement.

## IX.   FUTURE AMENDMENT

This Agreement may be amended, modified or supplemented only by written agreement of the Parties hereto executed by all of the Parties. No provision of this Agreement may be waived except in a writing signed by the Party against whom such waiver is sought to be enforced.

4

*** EXECUTION VERSION***

### X.    CONFIDENTIALITY

The terms of this Agreement are confidential and shall not be disclosed by any Party or their counsel except as required by legal process or by regulatory obligations.

### XI.    ENTIRE AGREEMENT

This Agreement constitutes the entire agreement and supersedes any prior written and/or oral agreements between the Parties with regard to the Apportionment Dispute and the forum for resolution of the Fee Dispute.

### XII.    COUNTERPARTS

This Agreement may be executed in counterparts and all such counterparts when so executed shall together constitute the final Agreement as if one document had been signed by all of the Parties.  This Agreement may be executed by facsimile copy and each signature thereto shall be and constitute an original signature, again as if all Parties had executed a single original document.

### XIII.    SEVERABILITY

Should a court of competent jurisdiction deem any provision of this Agreement illegal, invalid or otherwise unenforceable, in whole or in part, the remainder of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

### XIV.    BINDING EFFECT

This Agreement is binding upon and inures to the benefit of the Parties hereto and their respective successors and assigns.

### XV.    CONSTRUCTION OF AGREEMENT

This Agreement shall be construed without regard to any presumption or other rule of law requiring construction against the Party who caused it to have been drafted.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

ACTIVE\50516117.v13-12/3/17

*** EXECUTION VERSION***

**WE HAVE READ, UNDERSTAND, AND AGREE TO BE LEGALLY BOUND BY THE TERMS AND CONDITIONS OF THIS RELEASE.**



Allen L. Rothenberg, Esquire
For himself and on behalf of
The Law Firm of Allen L. Rothenberg and The Rothenberg Law Firm LLP

Thomas Fortune Fay, Esquire
For himself and on behalf of
Fay Law Group, P.A. and the Fay and Perles FSIA Litigation Partnership

Caragh Fay, Esquire
On behalf of Fay Law Group, P.A.

Steven R. Perles, Esquire
For himself and on behalf of
Perles Law Firm, P.C. and the Fay and Perles FSIA Litigation Partnership

Anthony LaSpada, Esquire

# Exhibit B

THE LAW OFFICE OF

# ALLEN L. ROTHENBERG

ROTHENBERG CENTER
1420 WALNUT STREET
SECOND FLOOR
PHILADELPHIA, PENNSYLVANIA 19102
WWW.INJURYLAWYER.COM

ALLEN L. ROTHENBERG*
BARBARA ROTHENBERG**
JOSEPH C. MURRAY
HARRY ROTHENBERG**
MARC J. ROTHENBERG *
NEIL M. SHUKOVSKY
LORI E. ZEID***
ROBERT G. MANGOLD***
BETH ROTHENBERG-HALPERIN***
ROSS B. ROTHENBERG ***
SCOTT J. ROTHENBERG**
BRADLEY S. HAMES ***

*ALSO MEMBER NY AND D.C. BAR
**ALSO MEMBER NJ AND NY BAR
**ALSO MEMBER NY BAR
***ALSO MEMBER NY BAR
* MEMBER NY, NJ AND D.C. BAR ONLY
** MEMBER NY AND NJ BAR ONLY
*** MEMBER NY, MD AND D.C. BAR ONLY

NEW YORK
450 SEVENTH AVENUE
NEW YORK, NEW YORK 10123
(212) 563-0100

WASHINGTON, D.C.
700 5TH STREET N.W.
WASHINGTON, D.C. 20001
(202) 986-4600

NEW JERSEY
Law Firm of Barbara Rothenberg
811 CHURCH ROAD
CHERRY HILL, N.J. 08002
(856) 665-7400

TELEPHONE (215) 732-7000

FAX (215) 732-2758

FEDERAL I.D. #23-1646941

November 27, 2007

Steven R. Perles, Esq.                    Thomas Fortune Fay, Esq.
1146 19th Street, 5th Floor               700 5th Street NW, Suite 200
Washington, DC  20036                     Washington, DC  20001

     Re:     Division of Fees—Peterson et al. v. Iran

Dear Steve and Tom,

     Kindly allow this letter to memorialize and confirm that to which we have agreed in our many in-person meetings and telephone conversations regarding our firms' division of fees in the matter of Peterson et al. v. Iran. This agreement shall supersede any prior agreements between us and our firms regarding this matter.

     We agree that, as co-counsel, each of our respective firms is to receive one-third of the net attorneys' fee achieved in this matter from all claims on behalf of the 101 servicemen or their estates as named in the attached list compiled by Tom and his staff.  Each of our three firms is also to receive one-third of the net attorneys' fee resulting from damages awarded in this matter at any time to any of the listed serviceman's family members or those family members' estates.

     Please sign where indicated, signifying your agreement to that herein stated, and please initial the attached list where indicated, signifying that you have read and approved it.

     I look forward to continuing to work with you for the mutual benefit of our respective firms and our clients, and to provide a strong deterrent to international state-sponsored terrorism.

                    Sincerely,

                    ALLEN L. ROTHENBERG

ALR/amz
Enclosure

Agreed and Accepted:                   Agreed and Accepted:

_____  11/28/2007 _____  _____ Day 11/28/2007
STEVEN R. PERLES, ESQ.    Date       THOMAS FORTUNE FAY, ESQ.    Date

## Rothenberg/Perles/Fay Clients

### Victims' and Survivors' Names

Abbott, Terry
Albright, Marvin (s)
Allman, John Robert
Arroya, Pablo (s)
Banks, Anthony (s)
Bates, Ronny
Beamon, Jess
Belmer, Alvin
Blankenship, Richard
Blocker, John W.
Boccia, Joseph J. Jr.
Boulos, Jeffrey Joseph
Burnette, Rodney (s)
Callahan, Paul Lynn
Ceasar, Johnnie D.
Comes, Frank, Jr. (s)
Conley, Robert Allen
Cook, Charles Dennis
Copeland, Johnny Len
Cyzick, Russell
Dolphin, Glenn (s)
Dorsey, Nathaniel G.
Dunnigan, Timothy J.
Earle, Bryan L.
Eaves, Daniel
Estes, Danny R.
Fluegel, Richard A.
Frye, Charles (s)
Fulcher, Michael D.
Gangur, George
Garcia, Randall J.
Garner, Truman Dale
Ghumm, Harold D.
Haskell, Michael S.
Helms, Mark A.
Hildreth, Donald
Hlywiak, John (s)
Hudson, Dr. John R.
Iacovino, Edward, Jr.
Jacobs, Joseph (s)
Jenkins, Nathaniel

Allen L. Rothenberg, Esq.:        Thomas Fortune Fay, Esq.:        Steven R. Perles, Esq.:

Johnston, Edward
Jones, Steven
Julian, Thomas Adrian
Keown, Thomas C.
Kirkpatrick, Brian (s)
Kluck, Daniel
Kreischer, Freas, III
Laise, Keith
Langon, James J.
LaRiviere, Michael S.
LaRiviere, Steven B.
Lemnah, Richard
Lyon, Paul
Maitland, Samuel
Martin, Charlie Robert
McDonough, James
Menkins, Robert, Jr.
Meurer, Ronald
Mitchell, Timothy D. (s)
Moore, Joseph
Moore, Lovelle (s)
Nashton, Jeffrey (s)
Oliver, John Edward (s)
Olson, John
Owens, Joseph A.
Page, Connie Ray
Pearson, John L.
Pollard, William Roy
Prevatt, Victor Mark
Richardson, Warren
Russell, Stephen (s)
Sauls, Michael C.
Schultz, Scott Lee
Scialabba, Peter
Scott, Gary R.
Shipp, Thomas Alan
Shropshire, Jerryl D.
Simpson, Larry H. Jr.
Smith, Kirk II.
Smith, Thomas G.
Sommerhof, William Scott
Spaulding, Dana (s)
Spencer, Stephen E.
Stelpflug, William John
Stephens, Horace Renardo
Stockton, Craig

Allen L. Rothenberg, Esq.:        Thomas Fortune Fay, Esq.:        Steven R. Perles, Esq.:

_____        _____        _____

Sturghill, Eric D.
Swinson, Craig (s)
Tingley, Stephen Dale
Toma, Michael (s)
Vallone, Donald H. Jr.
Wheeller, Pastor Danny
Wigglesworth, Dwayne
Williamson, Johnny Adam
Williams, Rodney J.
Williams, Scipio, Jr.
Winter, William Ellis
Woollett, Donald E.
Young, Jeffrey D.
Young, Thomas P. (s)

Allen L. Rothenberg, Esq.:          Thomas Fortune Fay, Esq.:          Steven R. Perles, Esq.:

# Exhibit C

Law Offices

# FAY KAPLAN LAW, PA

**Thomas Fortune Fay**
**777 Sixth Street, NW**
**Suite 410**
**Washington, DC 20001**
**Tel. 202/589-1300**
**Fax 202/589-1721**
Date: 2/23/2012
*By Messenger*

Steven R. Perles, Esq.
1146 Nineteenth Street, NW
Suite 500
Washington, DC 20036

Re: Marines Cooperation Agreement

Dear Steve:

Enclosed herewith please find an executed original of the Marines Cooperation Agreement. If you have any inquiry as to the above subject or you need any other information or documents, please contact me at the above address.

Very truly yours,

Thomas Fortune Fay

TFF/pc
ENCLOSURE

## **AGREEMENT**

WHEREAS, Fay & Perles were retained to represent all Marine victims and their family members who suffered as a result of the Iranian bombing of the Marine barracks in Beirut, Lebanon in 1983 and subsequently filed *Deborah D. Peterson, et al. v. The Islamic Republic of Iran* in the United States District Court for the District of Columbia, as the first in a series of civil actions against the Islamic Republic of Iran, and

WHEREAS, the judgment creditors in the case of *Deborah D. Peterson, et al. v. The Islamic Republic of Iran*, hereafter referred to as the "Peterson Group," filed an action in the United States District Court For The Southern District Of New York, on or about June 8, 2010, docketed as Civil Action No. 10 Civ. 4518, which action, inter alia, requests issuance of an Order for turnover of certain assets being held in a sub-custodial account by defendant, Citibank, N.A., for the benefit of the judgment debtor, *The Islamic Republic of Iran*, and

WHEREAS, the Peterson Group in Civil Action No. 10 Civ. 4518, seeks to obtain said assets in partial satisfaction of a civil judgment the members of the Peterson Group obtained on or about September 7, 2007, in the amount of $2,656, 944,220.00, in the United States District Court For The District Of Columbia, and

WHEREAS, the defendant, Citibank, N.A., has filed a third party complaint in Civil Action No. 10 Civ. 4518, asserting that it is in receipt of notice and civil process from other judgment creditors who have asserted claims to the same assets as were attached and restrained by the Peterson Group, and requesting a determination by the Court of these competing claims to the assets attached by the Peterson Group, and

1

WHEREAS, the assets executed upon do not appear to be sufficient to satisfy the competing claims of all of these judgment creditors and certain judgment creditors wish to enter into an agreement providing for distribution of the assets attached in a manner so as to afford partial collection to all judgment creditors joining in this agreement, and

WHEREAS, the following actions have been filed on behalf of members of the American Armed Forces in which judgments for compensatory damages have been or are expected to be entered against The Islamic Republic Of Iran in the amounts indicated in the United States District Court For The District Of Columbia:

| Name | Civil Action No. | Amount | Date/Entry |
|---|---|---|---|
| Peterson Group | 01-2094 | $2,656,944,877 | 9/7/2007 |
| Valore Group[1] | 03-1959 | 290,291,092 | 11/5/2009 |
| Elizabeth Murphy Group | 06-596 | 31,865,570 | 9/24/2010 |
| Bland[2] Group | 05-2124 | 277,805,908 | 12/21/2011 |
| Davis Group | 07-1302 | | |
| Taylor[3] Group | 10-844 | | |
| Brown Group | 08-531 | | |
| Fain Group | 10-628 | | |

WHEREAS, the President of the United States froze all Iranian assets in the United States on February 6, 2012 under the International Emergency Economic Powers Act (50 U.S.C. 1701 *et seq*.) (IEEPA), the National Emergencies Act (50 U.S.C. 1601 *et seq*.), section 1245 of the National Defense Authorization Act for Fiscal Year 2012 (Public Law 112-81) (NDAA), and section 301 of title 3, United States Code, thereby making any punitive damage award

---

[1] The Valore Group is the group of cases consolidated by order of Judge Lambreth on March 30, 2010: 06-cv-750-RCL-SPENCER, 06-cv-516-RCL-ARNOLD, 03-cv-1959-RCL-VALORE, 08-cv-1273-RCL-BONK. Punitive damages award of $1,000,000,000, is not included for purposes of this Agreement.
[2] Punitive damages award of $955,652,324, is not included for purposes of this Agreement.
[3] The Taylor Group for purposes of this document refers to three cases – O'BRIEN CA 06-690, ANDERSON CA 08-535 and TAYLOR CA 10-844

2

unenforceable pursuant to the Terrorism Risk Insurance Act ("TRIA"), which only allows for the satisfaction of compensatory damage awards against blocked assets.

NOW THEREFORE, the judgment creditor groups named above agree as follows:

(1)Each judgment creditor group will take all necessary measures to assert a valid writ/claim in the collection proceedings under way in Civil Action No. 10 Civ. 4518, but none will proceed in any manner seeking to obtain a ruling from the Court that the writ or other claim to the assets asserted by any other creditor group joining in this Agreement is invalid nor shall any other creditor group joining in this Agreement assist any other claimant in doing so. In addition, upon notification that a judgment creditor group has entered into this Agreement the above provisions shall be likewise applicable to that contracting judgment creditor group.

(2)Upon collection from the defendants upon the claims submitted by the judgment creditor groups, the reasonable costs incurred by each judgment creditor group which has entered into this Agreement will be paid from the amounts collected prior to distribution of the net amount as set forth below. Any dispute as to payment of any item of costs will be submitted for arbitration under the rules for commercial arbitration of the American Arbitration Association.

(3)The total amounts collected by each of the judgment creditor groups, less the total expenses paid out to those parties in accordance with the provisions of the preceding paragraph, shall then be divided and the percent distributed to each judgment creditor group which the judgment amount of that group bears to the total for all of the judgment creditor groups entering into this Agreement.

(4)This contract does not constitute an assignment of the judgment obtained by any contracting judgment creditor group, but rather constitutes only an agreement relating to association for the purpose of collection and division of the proceeds from the collection

3

activities of the participating groups. Each contracting judgment creditor group recognizes that the judgment for damages obtained by it against The Islamic Republic Of Iran will be reduced by the amount received by that contracting judgment creditor group for expenses and the amount received by that contracting judgment creditor group in compensation under the judgment. Each contracting judgment creditor group agrees to take all procedural steps necessary to notify the Court in which the judgment has been entered or registered of this reduction in their judgment amount outstanding.

(5)Each judgment creditor group, by entry into a contract in the above form commits to participate to the extent possible, given its resources. The inability of any group to participate in the collection prosecution in part or entirely shall not constitute a breach of this Agreement.

(6)The parties to this Agreement herewith authorize Thomas Fortune Fay and Steven R. Perles as their agents and attorneys in fact to enter into such further agreements with other groups holding judgments which have issued execution with respect to the assets which are the subject of Civil Action No. 10 Civ. 4518 to divide the amounts recovered in that action in proportion to the compensatory damage award component of the final judgments held by such groups.

(7) Attorneys shall advise any dissenters to this agreement in each participating creditor group that they may retain their own counsel and proceed independently.

4

**IN WITNESS WHEREOF**, the parties hereto acknowledge, understand and agree to the above. The parties understand and intend to be bound by all of the clauses contained in this document and further certify that they have received signed copies of this agreement at the time of execution on the day, month and year above set forth.

Date: 2 / 21 / 2012

**THE PETERSON GROUP**

By: _____
Thomas Fortune Fay, Esq.
Attorney for Plaintiffs

By: _____
Steven R. Perles
Attorney for Plaintiffs

**THE BLAND GROUP**

By: _____
Noel J. Nudelman, Esq.
Attorney for Plaintiffs

**THE VALORE GROUP**

By: _____
Keith M. Fleischman, Esq.
Attorney for Plaintiffs

By: _____
Joseph Peter Drennan, Esq.
Attorney for Plaintiffs

By: _____
Noel J. Nudelman, Esq.
Attorney for Plaintiffs

By: _____
Patrick M. Donahue, Esq.
Attorney for Plaintiffs

By: _____
Daniel W. Gaskill, Esq.
Attorney for Plaintiffs

By: _____
Thomas Fortune Fay
Attorney for Plaintiffs

**THE ELIZABETH MURPHY GROUP**

By: _____
John W. Karr, Esq.
Attorney for Plaintiffs

5

**THE DAVIS GROUP**

By: _____
Thomas Fortune Fay
Attorney for Plaintiffs

**THE TAYLOR GROUP**

By: _____
Joseph Peter Drennan, Esq.
Attorney for Plaintiffs

**THE BLAND GROUP**

By: _____
Noel J. Nudelman, Esq.
Attorney for Plaintiffs

**THE BROWN GROUP**

By: _____
Noel J. Nudelman, Esq.
Attorney for Plaintiffs

**THE FAIN GROUP**

By: _____
Joseph W. Fay
Attorney for Plaintiffs

6

## CERTIFICATE OF SERVICE

I, Peter C. Buckley, hereby certify that on the date below, I served the foregoing Demand

for Arbitration via certified mail and electronic mail on Respondents at the following addresses:

Thomas Fortune Fay, Esquire
777 6th Street NW #410
Washington, DC 20001
thomasfay@aol.com
caraghfay@gmail.com

Fay Law Group, P.A.
777 6th Street NW #410
Washington, DC 20001
thomasfay@aol.com
caraghfay@gmail.com

Steven R. Perles, Esquire
816 Connecticut Ave., NW
12th Floor
Washington, DC 20036
sperles@perleslaw.com
dbregman@bregmanlaw.com
ghervey@bregmanlaw.com

Perles Law Firm P.C.
816 Connecticut Ave., NW
12th Floor
Washington, DC 20036
sperles@perleslaw.com
dbregman@bregmanlaw.com
ghervey@bregmanlaw.com

Fay and Perles FSIA
Litigation Partnership
c/o Thomas Fortune Fay and
Steven R. Perles, Esquires

_____
Peter C. Buckley, Esquire

September 14, 2021