# Exhibit 10

# Fay & Perles

*A Joint Venture to provide justice for the victims of the 10/23/1983 Beirut Bombing.*

*Semper Fidelis*

Dear Peacekeepers and their Families:

We hope this letter finds you well. We are writing to inform you that one of your attorneys, Allen Rothenberg, may have violated duties owed to you with respect to his representation of you regarding your case against Iran. The manner in which your lawyers, including Mr. Rothenberg, represent you in this matter is governed by the Rules of Professional Conduct ("Rules"). Failure to abide by those Rules can result in disciplinary action. More importantly, an attorney's failure to abide by those rules places the interests and welfare of clients at risk, and that is unacceptable.

One of our duties is to keep you informed of all events that may adversely affect your goal of recovering damages from Iran. This letter is intended to assist you to determine whether you remain satisfied with how your interests against Iran are being represented. As such, we bring the information in this letter to your attention. We conferred with ethics counsel in the course of preparing and sending this letter to you.

**I. Background**

As you may recall, Mr. Rothenberg is one of the attorneys you hired to prosecute and recover your claims against Iran for its role in the October 23, 1983, bombing of the Marine Corps barracks in Beirut, Lebanon (the "Beirut bombing"). Mr. Rothenberg recently claimed that we (that is, the Fay and Perles attorneys) misled you into entering into an agreement under which you would share your recovery from an Iranian asset with other victims of the 1983 Beirut Barracks bombing in the event the asset was collected. To the best of our knowledge, Mr. Rothenberg has not brought his accusation to your attention or done anything to assist you in deciding the best course of action (in his view); instead, he is now demanding that we (Fay and Perles) pay him money. In this regard, he assumes that the successful collection of the asset would have occurred without the sharing agreement that he now complains about.[1] Therefore, says Mr. Rothenberg, by agreeing to share your recovery with other Marines and their family members who were injured by the bombing, you gave away millions of dollars of <u>his</u> money (that is, his legal fees), and he has filed an arbitration action[2] demanding that we pay him that money.

As you know, we succeeded in obtaining a judgment on behalf of you and other victims of the Beirut bombing against Iran in September of 2007. The judgment in your favor, which was won in a D.C. federal lawsuit called *Peterson v Iran*, was for more than $2.6 billion. We later discovered an Iranian asset in New York, totaling approximately $1.8 billion, which we call the "Clearstream Asset." Through many years of litigation in New York, we won the right to collect

---

[1]  We maintain that you would most likely would have recovered nothing at all if there had been no sharing agreement.

[2]  Arbitration is essentially private litigation. Rather than claims and defenses proceeding in a court of law, the parties hire and pay a private person, in this case, a retired judge, to hear the evidence and decide the case.

Peterson v. Iran Clients
April 16, 2024,
Page 2

approximately $1.6 billion of the proceeds of the Clearstream Asset on your behalf, from which you later received your recovery.

Part of winning that right included working out arrangements with other claimants – both Marines claimants and others – that might have otherwise competed against you for the Clearstream Asset, including plaintiffs in other cases with existing or pending terrorism judgments against Iran, including those filed by other victims of the Beirut bombing. Accordingly, we recommended that you enter into two sharing agreements (referred to as the "87/13 Agreement" and the "Marines Sharing Agreement") to resolve the competition issue. Otherwise, the Court would have had to resolve those competing claims, and we were concerned that it could take many years for that process to conclude.

We also recommended the agreements because, as we explained at the time, we were working with Congress to pass a statute (referred to as "Section 8772") that would help us convince the Court to allow collection of the Clearstream Asset to proceed. Congress was not going to pass that statute without the sharing agreements because they did not want to be in a position of choosing one group of victims over another. You followed our recommendations and, just over a month after the agreements became final, Congress passed the statute, which President Obama signed into law. A little more than six months after Section 8772 became law, the Court—relying heavily on the statute—ordered the Clearstream Asset be collected from Iran. In doing so, the Court ruled that it no longer had to decide on the competing claims to the Clearstream Asset, and it therefore closed the case.

The proceeds of the Clearstream Asset were later distributed under the terms of the sharing agreements. Because you agreed to share your recovery with other Marines and their family members who were injured by the bombing, the amount that you actually received from the collection was less than what it arguably could have been if you had not agreed to share, but it is doubtful that anything would have been collected without the sharing agreements. Similarly, because less money was collected for you, your attorneys, including Thomas Fay and Steven Perles as well as Allen Rothenberg, received less in legal fees from you.[3] That is because, pursuant to the contingent retainer agreement that you signed, those fees were based on what was actually collected on your behalf and not what might have been collected without the sharing agreements.

The lower realization of attorney fees is the basis of Mr. Rothenberg's claim: he claims that, because you entered into the Marines Sharing Agreement, under which you agreed to share your recovery with other Marines and their family members, you received less and, therefore, he received less in legal fees. Mr. Rothenberg claims that he would have received more legal fees if there had been no sharing and that, therefore, you should not have agreed to the Marines Sharing Agreement. But, without both of the sharing agreements, including the Marines Sharing Agreement, it is probable that you would not have received anything at all, and neither would Mr. Rothenberg. More to the point, if Mr. Rothenberg truly believed that the Marines Sharing

---

[3] As you know, the attorneys at the Fay and Perles firms received legal fees from other victims of the Beirut bombing in cases filed after *Peterson* because of your decision to enter both sharing agreements.

Peterson v. Iran Clients
April 16, 2024,
Page 3

Agreement was improper, then he should have told you that at some point and not just advanced claims seeking more attorney fees for himself regardless of what you actually received. The fact that he is only advancing his own interests and not yours is a fact that we are obligated to bring to your attention.

## II. Mr. Rothenberg

### A. Diligence and Zeal

Under the terms of the contingent retainer agreement, your lawyers (Fay, Perles, and Rothenberg) represent your interests—not their own—against Iran for its role in the Beirut bombing. The scope of our representation includes prosecuting and recovering your claims against Iran. The Rules mandate that we do so with diligence and zeal, and we are prohibited from intentionally foregoing actions that could remedy harms done to your rights.

Mr. Rothenberg has asserted that he learned about the Marines Sharing Agreement in 2015, but he has never told you that he believes that that agreement is not valid because, according to him, we misled you into entering into it.[4] He therefore claims that you were wrongfully deprived of more than $150 million of the Clearstream Asset being collected on your behalf, which he claims wrongfully reduced the attorney fees that he expected to receive. Yet, despite the duties he owes to you, Mr. Rothenberg has never advised you of his belief nor has he taken any action to recover any money that he somehow believes should have been collected for you.

Instead, he has filed an arbitration action against us in which he seeks an award that includes the amount of attorneys' fees he claims you would have paid him without the Marines Sharing Agreement, plus interest. Mr. Rothenberg says that his damages are approximately $28 million.

As far as the merits of Mr. Rothenberg's allegations are concerned, we deny them in the strongest possible terms and stand by everything we have done for you, including carrying out your instruction to leave no marine behind. Mr. Rothenberg has not seen fit to contact you about his allegations, and as far as we know has done nothing for you in response and is pursuing only his own financial interests.

### B. Professional Judgment

Lawyers are prohibited from representing clients when the lawyers' own financial interests have a negative impact on the professional judgment they owe their clients. Clients should not be in doubt as to whether their attorneys will wholeheartedly and zealously represent their interests.

Mr. Rothenberg's claim assumes that the collection from the Clearstream Asset would have occurred without the Marines Sharing Agreement; we strongly dispute that assumption. Mr. Rothenberg is not a collection lawyer, and he chose to step down as an active member of your legal team when we began our collection efforts in 2008. Mr. Rothenberg never contributed

---

[4] Purportedly for inaccurately estimating that we would make less in attorneys' fees under the agreement, and for suggesting you get a second opinion about our recommendation if you felt the need.

Peterson v. Iran Clients
April 16, 2024,
Page 4

meaningfully to our litigation strategy, and he purposely removed himself from participating in the collection efforts.[5]

Now, Mr. Rothenberg is pursuing millions of dollars in attorneys' fees solely for himself based on the alleged diminished amount of your collection. Although Mr. Rothenberg now criticizes the litigation strategy that we employed, the purpose of his opinion is to support the monetary award he wants in his arbitration action. It is up to you to decide whether Mr. Rothenberg's financial interests have affected his professional judgment.

**III. Future Collection Efforts**

You need to be aware that Mr. Rothenberg's position regarding the sharing agreements may affect our ongoing efforts to collect the balance of your judgments against Iran. As detailed above, the 87/13 Agreement and the Marines Sharing Agreement facilitated the collection of $1.6 billion in Iranian assets on your behalf. We have therefore recommended that you enter into similar agreements that we hope will facilitate collections in actions we have referred to as 650 Fifth Avenue and Clearsteam II. It is not clear whether Mr. Rothenberg will object to those agreements, or others that we may propose, but it is possible that he might and thereby demand that we consider his interests in addition to or instead of yours as we strategize how best to collect your judgments going forward. You need to be aware of this because we do not believe that it is in your best interests.

**IV. Conclusion**

Under the Rules of Professional Conduct, you have the ultimate authority to determine the goal of our representing you. You have decided that this goal includes collecting monetary damages from Iran. It is our ethical duty as professionals and as zealous advocates for your interests to keep you informed about events that can be expected to impact that goal. And that is the purpose of this letter. It is now entirely up to you as to what, if anything, you want to do with the information. You have the absolute right to make changes to your legal team or to leave the team intact. Regardless of what you decide, the Rules of Professional Conduct will continue to require that your interests be represented with diligence and zeal.

If you wish to contact Mr. Rothenberg about his allegations and claims, you can do so at: The Rothenberg Law Firm LLP, 1420 Walnut Street, Philadelphia, PA, 19102; (215) 330-6551; allan@injurylawyer.com; www.InjuryLawyer.com.

Of course, and as always, you are free to contact us with any questions.

---

[5] At the same time, Mr. Rothenberg represented plaintiffs in non-Beirut bombing cases that were competing against you in the New York litigation. Those plaintiffs were in the following cases: *Greenbaum, et al. v. the Islamic Republic of Iran, et al.* case no.: 02-cv-02148 (D.D.C.); *Acosta, et al. v. the Islamic Republic of Iran, et al.*, case no.: 06-cv-00745 (D.D.C.); *Kirschenbaum, et al. v. the Islamic Republic of Iran, et al.* case no.: 03-cv-01748 (D.D.C.); and *Beer, et al. v. the Islamic Republic of Iran, et al.,* case no.: 06-cv-00473 (D.D.C.). We understand that Mr. Rothenberg received several million dollars in attorney fees with respect to the amounts that the plaintiffs in those cases received from the distribution of the Clearstream Asset pursuant to the "87/13 Agreement."

Peterson v. Iran Clients
April 16, 2024,
Page 5

  The Fay & Perles teams continue to be honored to work for you and provide you with quality representation in the presentation of your FSIA (Foreign Sovereign Immunities Act) claim. We have become a family over the years, and we hope that you know that we work very hard for you in creating this new ever-evolving area of the law of anti-terrorism litigation. We have done historic, ground-breaking litigation in this case and hope that we have the opportunity to keep this dream alive in the future.

  Semper Fi.

  God Bless the Peacekeepers.