UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Thomas Fortune Fay and<br>The Fay Law Group, P.A.,<br><br>               Petitioners,<br><br>v.<br><br>Allen L. Rothenberg, Esq.,<br>The Law Firm of Allen L. Rothenberg, and<br>The Rothenberg Law Firm LLP,<br><br>               Respondents. | Civil Action No. 1:25-cv-7613 |
| Allen L. Rothenberg, Esq.,<br>The Law Firm of Allen L. Rothenberg, and<br>The Rothenberg Law Firm LLP,<br><br>               Cross-Petitioners,<br><br>v.<br><br>Thomas Fortune Fay and The Fay Law Group,<br>P.A., Steven R. Perles, Perles Law Firm, P.C.,<br>and Fay and Perles FSIA Litigation Partnership,<br><br>               Cross-Petition Respondents. | |
| Steven R. Perles, Esq. and<br>Perles Law Firm, P.C.,<br><br>               Petitioners,<br><br>v.<br><br>Allen L. Rothenberg, Esq.,<br>The Law Firm of Allen L. Rothenberg, and<br>The Rothenberg Law Firm LLP,<br><br>               Respondents. | Civil Action No. 1:25-cv-8219 |

| |  |
|---|---|
| Fay and Perles FSIA Litigation Partnership,<br><br>            Petitioner,<br><br>v.<br><br>Allen L. Rothenberg, Esq.,<br>The Law Firm of Allen L. Rothenberg, and<br>The Rothenberg Law Firm LLP,<br><br>            Respondents. | Civil Action No. 1:25-cv-8281 |

**PERLES' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR PETITION TO VACATE ARBITRAL AWARD AND IN OPPOSITION TO <u>ROTHENBERG'S PETITION TO CONFIRM ARBITRAL AWARD</u>**

**[ORAL ARGUMENT REQUESTED]**

**MORRISON COHEN LLC**

Danielle C. Lesser
Edward P. Gilbert
Christopher C. LoBosco
909 Third Avenue
New York, NY 10022
(212) 735-8600

*Attorneys for Steven R. Perles, Esq.*
*and Perles Law Firm, P.C.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ..................................................................................................................... 2

I.   THE SANCTIONS AWARD AND FINAL AWARD SHOULD BE VACATED FOR EXCEEDING THE ARBITRATOR'S AUTHORITY ............................................... 2

   A.   THE ARBITRATOR DECIDED CLAIMS OUTSIDE OF THE FEE DISPUTE SUBMITTED TO ARBITRATION ............................................................ 3

      i.   *The Fee Dispute was limited to the dilution of Rothenberg's fee resulting from the Marines Cooperation Agreement.* ................................. 3

      ii.  *The Sanctions Award exceeded the Fee Dispute submitted to Arbitration* .......................................................................................... 5

      iii. *The Final Award exceeded the Fee Dispute submitted to Arbitration* .......................................................................................... 7

   B.   THE SANCTIONS AWARD VIOLATED JAMS RULE 29 ......................................... 8

II.  THE FINAL AWARD SHOULD BE VACATED FOR MANIFESTLY DISREGARDING THE LAW ...................................................................................... 11

CONCLUSION ................................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashraf v. Republic N.Y. Sec. Corp.*,
   14 F. Supp. 2d 461 (S.D.N.Y. 1998) ......................................................................................8

*Gulf Coast Indus. Workers Union v. Exxon Co., U.S.A.*,
   991 F.2d 244 (5th Cir. 1993) ..................................................................................................8

*Kaplan v. First Options*,
   19 F.3d 1503 (3d Cir. 1994) ............................................................................................7, 9

*Melun Indus. v. Strange*,
   898 F. Supp. 990 (S.D.N.Y. 1990) .........................................................................................2

*N.Y. Tel. Co. v. Communs. Workers Loc. 1100*,
   256 F.3d 89 (2d Cir. 2001) ....................................................................................................11

*Pauwels v. Deloitte LLP*,
   83 F.4th 171 (2d Cir. 2023) ..................................................................................................12

*ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*,
   564 F.3d 81 (2d Cir. 2009) ....................................................................................................9

*Sorenson v. Winston & Strawn, LLP*,
   162 A.D.3d 593 (1st Dep't 2018) .........................................................................................12

Petitioners and Cross-Petition Respondents Steven R. Perles, Esq. and Perles Law Firm, P.C. (collectively, "Perles")[1] respectfully submit this Memorandum of Law in support of their Petition (Dkt. 1)[2] filed in *Perles et al. v. Rothenberg et al.*, No. 1:25-cv-08219-UA ("Perles Action") to vacate the Final Award (Dkt. 1-15), and in opposition to Respondents' and Cross-Petitioners' Allen L. Rothenberg, Esq., The Law Firm of Allen L. Rothenberg, and The Rothenberg Law Firm LLP (collectively, "Rothenberg") cross-petition ("Cross-Petition") filed in *Fay et al. v. Rothenberg et al.,* No. 1:25-cv-07613-LA ("Fay Action") to confirm the Final Award.

## **PRELIMINARY STATEMENT**

Perles' Petition establishes that the Sanctions Award and Final Award exceeded the Arbitrator's authority and manifestly disregarded the law. In defense of these rulings, Rothenberg attempts to broaden the scope of the parties' specific arbitrable Fee Dispute to include all disputes between the parties over any attorneys' fees whatsoever. However, as reflected in the Arbitration Agreement, Demand, and the Arbitrator's own rulings, the parties agreed to arbitrate something far narrower: whether the Marines Cooperation Agreement diluted Rothenberg's fees in *Peterson* under the Co-Counsel Agreement, entitling him to damages. The Arbitrator unquestionably exceeded his authority by basing the Sanctions Award on Perles' and Fay's purported efforts to oust Rothenberg from representing *Peterson* plaintiffs in subsequent collection efforts, and by basing the Final Award on Perles' and Fay's use of *Peterson* work product in Follow-On Cases.

Rothenberg urges that the Sanctions Award was within the Arbitrator's power to protect the sanctity of the declaratory relief he sought in the Demand, which concerned Rothenberg's entitlement to future attorneys' fees under the Co-Counsel Agreement. But Perles' and Fay's

---

[1] All undefined capitalized terms have the meanings ascribed in the Petition.

[2] "Dkt." cites and "Fay Dkt." cites refer to documents filed to the Perles Action and Fay Action dockets, respectively.

1

actions—whether or not they violated any procedural order—posed no plausible threat to Rothenberg's claim for declaratory relief. Perles and Fay escrowed millions of dollars for this purpose, and the Final Award ultimately denied relief on this claim in any event. By incorporating the Sanctions Award into the Final Award, the Arbitrator awarded millions of dollars in sanctions in unrecognized attorneys' fees to Rothenberg while simultaneously ruling that Rothenberg could not recover on the claims that the Sanctions Award was designed to safeguard.

The Sanctions Award also exceeded the scope of the Arbitrator's authority by violating JAMS Rule 29. Rothenberg contends that the Sanctions Award was a proper "compensatory sanction," but Rule 29 does not permit the Arbitrator to award millions of dollars in speculatory damages where (1) Rule 29 limits appropriate monetary sanctions to attorneys' fees and similar costs, (2) the Sanctions Award imposed unfair and overreaching obligations on Perles and Fay, (3) the Arbitrator ignored evidence that Perles never breached the order, and (4) the sanctions were far from proportional to Rothenberg's purported harm.

Rothenberg fails to rebut these critical points, establishing that the Arbitrator exceeded his authority. Rothenberg also fails to rebut that the Arbitrator violated public policy and manifestly disregarded the law on unjust enrichment and unclean hands. Accordingly, as set forth below, Perles' Petition should be granted, and the Cross-Motion denied.

## ARGUMENT

### I. THE SANCTIONS AWARD AND FINAL AWARD SHOULD BE VACATED FOR EXCEEDING THE ARBITRATOR'S AUTHORITY

Vacatur of an arbitration award is appropriate "where the arbitrator has ruled on issues not presented to him by the parties, or otherwise exceeded the scope of the authority granted to him by the contractual provision providing for arbitration." *Melun Indus. v. Strange*, 898 F. Supp. 990, 992 (S.D.N.Y. 1990). The Sanctions Award and Final Award should be vacated because the

Arbitrator decided issues outside of the limited Fee Dispute submitted to arbitration and violated the JAMS Rules the parties agreed governed the Arbitration.

### A. The Arbitrator Decided Claims Outside of the Fee Dispute Submitted to Arbitration.

The Parties defined the narrow Fee Dispute submitted to Arbitration as limited to whether Rothenberg's fees in *Peterson* were wrongfully diluted by virtue of the Marines Cooperation Agreement. The Arbitration Agreement did not contemplate nor did the Demand assert any claims concerning either (1) Rothenberg's later asserted claim that Perles and Fay tried to cause *Peterson* plaintiffs to terminate Rothenberg to circumvent his right to receive subsequently collected fees, or (2) Perles' and Fay's use of work product derived from *Peterson* to Rothenberg's exclusion. The Arbitrator exceeded his authority by granting the Sanctions Award and Final Award on precisely those grounds, respectively.

#### i. *The Fee Dispute was limited to the dilution of Rothenberg's fee resulting from the Marines Cooperation Agreement*.

Contrary to Rothenberg's expansive interpretation of the Arbitration Agreement, the parties did not agree to arbitrate any dispute "relating to the attorneys' fees and litigation expenses in [the Beirut Marine Cases],' including the Peterson Action." (Fay Dkt. 26 at 17). In support of Rothenberg's all-encompassing interpretation of the Arbitration Agreement, he alleges that he "took on $40+ million of risk related to Cook's claims … to secure the right to arbitrate the parties' disputes." (*Id.* at 2-3). But whatever consideration Rothenberg claims to have provided does not somehow expand the scope of the Fee Dispute actually submitted to arbitration.

Pursuant to the Co-Counsel Agreement, Rothenberg, Perles, and Fay agreed to divide evenly the net attorneys' fees in *Peterson*. (Dkt. 1-3). Due to Rothenberg's shoddy investigative efforts which failed to uncover all possible *Peterson* plaintiffs, Perles and Fay and others filed Follow-On Cases on behalf of additional plaintiffs. (Dkt. 1 ¶ 3). After securing damages judgments

3

in those actions and identifying Iran's Clearstream Assets to partially satisfy them, Perles and Fay negotiated the Marines Cooperation Agreement, pursuant to which *Peterson* plaintiffs and Follow-On plaintiffs agreed to share the funds recovered in an amount proportional to their respective damages. (*Id.* ¶¶ 55-66; *see also* Dkt. 1-4). Notwithstanding the necessity of the Marines Cooperation Agreement for congressional passage of the Act permitting any recovery of the Clearstream Assets (Dkt. 1 ¶¶ 74-75), and the *Peterson* plaintiffs' universal ratification of the arrangement (*id.* ¶ 66), Rothenberg's Fee Dispute took issue with how it would dilute his one-third interest in fees from *Peterson* (*id.* ¶ 80).

Accordingly, pursuant to the Arbitration Agreement, the parties agreed to submit to arbitration the specific "Fee Dispute … over whether Rothenberg is entitled to compensation from Fay and Perles caused by and/or related to sharing agreements between the plaintiffs and/or their attorneys" in *Peterson* and the Follow-On Cases. (Dkt. 1-6, Recital A). Consistent with this agreement, Rothenberg filed the Demand seeking solely to recover purported damages arising from the dilution of his fee under the Co-Counsel Agreement, resulting from the Marines Cooperation Agreement. (Dkt. 1-7). Throughout the Arbitration, the Arbitrator acknowledged and reiterated this specific, limited scope of the Fee Dispute:

- **Procedural Order 2**: "The claims are set forth in [Rothenberg's] Demand," and "the parties have no intention to amend or supplement their respective pleadings." (Dkt. 1-8 ¶ 4).

- **Sanctions Award**: "The Claimant first raised an issue regarding the Marines Cooperation Agreement and the dilution of his fees when he learned of that Agreement in or about 2017. The Arbitration Agreement dated December 4, 2017, and signed by all parties to this arbitration, clearly spelled out the issue the Claimant was raising with respect to the sharing agreements." (Dkt. 1-14 at 14).

- **Final Award**: "The Claimant raised with the Respondents the issue of his fee dilution by virtue of the Marines Cooperation agreement. The parties later entered into the December 4, 2017, Arbitration Agreement to submit the fee dispute to binding arbitration with JAMS." (Dkt. 1-15 at 19-20).

4

The Arbitrator departed from his own interpretation of the arbitrable Fee Dispute before him, basing the Sanctions Award and Final Award on entirely different grounds.

### ii.     *The Sanctions Award exceeded the Fee Dispute submitted to Arbitration*.

Rothenberg argues that the Sanctions Award was within the scope of the Arbitration Agreement, merely because it "concern[ed] the division of attorneys' fees in the Peterson Action potentially impacted by Fay & Perles' attempted end run." (Fay Dkt. 26 at 17). But the Sanctions Award addressed entirely separate (and new) arguments, outside of the Fee Dispute identified in the Arbitration Agreement and Demand.

Finding that certain emails Fay sent months after the Arbitration's proceedings closed violated Procedural Order 7, the Arbitrator sanctioned Perles and Fay by way of an adverse inference that they were "cloaking themselves in the Rules of Professional Conduct to steal [Rothenberg's] fees" by purportedly "coaxing" *Peterson* plaintiffs to terminate Rothenberg's representation in connection with ongoing collection efforts. (Dkt. 1-14 at 12, 17). Based on this inference, the Arbitrator sanctioned Perles and Fay, requiring them to pay Rothenberg for any shortfall in attorneys' fees occasioned by his termination by any *Peterson* plaintiffs. (*Id.* at 17-18). However, the Fee Dispute did not include Rothenberg's later occurring claim that Perles and Fay attempted to persuade *Peterson* plaintiffs to terminate Rothenberg. As Rothenberg concedes, "Rothenberg's Demand did not reference the attempted end-run giving rise to the sanctions award because Fay & Perles had not yet attempted it at the time." (Fay Dkt. 26 at 18). Rothenberg also admits that until that point, any issue concerning Rothenberg's entitlement to fees from *Peterson* plaintiffs that terminated him was "not a contested issue in the Arbitration." (*Id.* at 20).

Put simply, the Arbitrator drew an adverse inference that Perles and Fay were liable to Rothenberg for millions of dollars on some unpled claim akin to tortious interference with contract that had nothing to do with the Fee Dispute, based on events that happened months after the Arbitration

5

proceedings had already closed. Had the Arbitrator acted within the boundaries of his authority, he would have disregarded Rothenberg's newly asserted claims and left Rothenberg to pursue them elsewhere. Whatever concerns the Arbitrator had about Perles' and Fay's efforts to have *Peterson* clients terminate Rothenberg, the Arbitrator was powerless to rule on the issue because the parties never agreed to arbitrate that dispute.

Rothenberg attempts to justify the Arbitrator's authority to issue the Sanctions Award based on the Demand's claim for declaratory relief "setting forth his entitlement to future attorneys' fees from under the Co-Counsel Agreement sufficient to remedy … other damages caused by [Fay & Perles'] improper actions." (Fay Dkt. 26 at 18-19). His argument fails because the Arbitrator ultimately denied Rothenberg's claim, declaring instead that Rothenberg was "not entitled to future attorneys' fees pursuant to the … Co-Counsel Agreement sufficient to remedy any dilution of attorneys' fees resulting from the Peterson plaintiffs entering into the Marines Cooperation Agreement." (Dkt. 1-15 at 52). Therefore, any authority the Arbitrator had to issue sanctions pursuant to his "jurisdiction to protect the sanctity of the relief requested, including the issuance of a declaratory judgment" (Dkt. 1-14 at 16) was not a proper basis for the Sanctions Award. To highlight this point, the Arbitrator entered the initial Interim Award issuing sanctions against Perles and Fay, well after the close of the Arbitration's proceedings and while a final ruling was still pending, for trying to "render academic" the very declaratory relief (Dkt. 1-12 at 14-15) that the Arbitrator denied just months later in the Final Award (Dkt. 1-15 at 52). Making matters worse, the Arbitrator still incorporated the Sanctions Award into the Final Award, despite that Perles and Fay could not possibly threaten the relief that the Arbitrator had already found was unwarranted. (*Id.* at 64-75). Moreover, prior to issuing the Sanctions Award, the Arbitrator had already required Perles and Fay to place in escrow $3,200,000 "in attorneys' fees received from the 650 Fifth Avenue Action settlement" (Dkt. 1-11 at 6), eliminating any risk to Rothenberg's ability to recover damages in the event the Arbitrator had ruled in his favor.

6

### *iii.* **The Final Award exceeded the Fee Dispute submitted to Arbitration.**

Rothenberg argues that his unpled claim for unjust enrichment based on Perles' and Fay's use of *Peterson* work product was within the Arbitration Agreement merely because it was a "dispute … among the Parties relating to the attorneys' fees and litigation expenses in … the Peterson Action." (Fay Dkt. 26 at 7). In support of his argument, Rothenberg points to paragraph 15 of his Demand, which alleged that Perles and Fay "found a way to negotiate referral fee arrangements with other attorneys who had filed 'follow-on' claims on behalf of Beirut plaintiffs." (*Id.*). Rothenberg's selective quotation of the Arbitration Agreement does not broaden the scope of the Fee Dispute, as actually defined therein. Moreover, regardless of any vague allegations in the Demand, a full reading of Rothenberg's claims makes clear that the only dispute concerning Perles' and Fay's involvement with the Follow-On Cases was the purported dilution of Rothenberg's one-third fee in *Peterson*. (*See* Dkt. 1-7). This comports with the definition of Fee Dispute as "related to sharing agreements" (Dkt. 1-6), identified in the Demand as the Marines Cooperation Agreement, as opposed to "referral fee arrangements" with which the Demand raised no actual issue.

Nor did Perles waive his objection to jurisdiction on these grounds. Throughout the Arbitration, Perles objected to the Arbitrator's authority to determine issues which were not within the scope of the Fee Dispute. For example, in opposition to Rothenberg's sanctions motion, Perles asserted: "[T]he Arbitration Agreement governs Mr. Rothenberg's fee dilution claim. This Arbitration does not have universal jurisdiction over any and every dispute between Rothenberg, Fay and Perles." Ex. 1 at 4. Perles also argued in his motion to reconsider that "Respondents would not have, and did not, consent to open-ended jurisdiction in this Arbitration for all future complaints by Rothenberg about his fees." (Dkt. 1-13 at 1). Perles' repeated objection that the Arbitrator could not decide issues outside the limited Fee Dispute "remain[ed] preserved for judicial review absent a clear and unequivocal waiver," which Perles never provided. *Kaplan v. First Options*, 19 F.3d 1503, 1510 (3d Cir. 1994). In support

of Rothenberg's waiver argument, he claims he pled unjust enrichment in the Demand and "submitted an expert report and expert testimony articulating those damages." (Fay Dkt. 26 at 18). However, just as the Demand did not concern the use of Peterson work product, neither did his expert's damages opinion, which only calculated damages as the fees Rothenberg would have received absent the Marines Cooperation Agreement. (Fay Dkt. 17).

Rothenberg's sole case on this point is also distinguishable. There, petitioner sought to vacate an arbitration award because it relied on a new theory of damages asserted for the first time in respondent's post-hearing brief to which petitioner did not have the opportunity to respond. *Ashraf v. Republic N.Y. Sec. Corp.*, 14 F. Supp. 2d 461, 463 (S.D.N.Y. 1998). The Court held that petitioner waived its objection because the arbitration rules granted it other avenues to contest the merits of respondent's claim in arbitration before raising the issue as a basis for vacatur before the Court. *Id.* Here, Perles concedes that he had the ability to contest the merits of Rothenberg's new unjust enrichment theory in his post-hearing brief. However, entirely unlike the procedural objection in *Ashraf*, Perles objects that the Arbitrator lacked authority to decide the issue at all, which is properly considered now in connection with the Petition. *See Gulf Coast Indus. Workers Union v. Exxon Co., U.S.A.,* 991 F.2d 244, 255 n.12 (5th Cir. 1993) (finding no waiver of objection that the arbitrator exceeded its authority by not first objecting in the arbitration).[3]

### B.     The Sanctions Award violated JAMS Rule 29.

Rothenberg repeatedly characterizes the Sanctions Award as issuing only "compensatory sanctions." (*See, e.g.*, Fay Dkt. 26 at 4). That is, "a remedial sanction against Fay & Perles that

---

[3] Any claimed similarity between Rothenberg's unpled claims and "Perles' unjust enrichment claim against the Indirect Follow-On Attorneys in *Perles v. Drennan*" (Fay Dkt. 26 at 18) is irrelevant to the issue of waiver. Also, contrary to Rothenberg's contention that Perles "successfully pursued" anything in connection with that case, as recognized in the Final Award, "Perles ultimately discontinued this action … after reaching a confidential settlement." (Dkt. 1-15 at 10).

8

requires them to make up … any loss" which is "proportional to the harm" they purportedly caused. (*Id.* at 6). Rothenberg's argument identifies precisely why the Sanctions Award is inappropriate because JAMS Rule 29 does not (nor does any rule) permit the award of such sanctions. Pursuant to JAMS Rule 29, an arbitrator may award as sanctions "any other costs occasioned by the actionable conduct, including reasonable attorneys' fees." The single case to which Rothenberg cites involving an arbitrator's sanctions award involved a grant of attorneys' fees. (Fay Dkt. 26 at 25 (citing *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*, 564 F.3d 81 (2d Cir. 2009)). Clearly, "costs occasioned by the actionable conduct" refers to attorneys' fees and similar expenses, and not compensation in the form of millions of dollars in unproven and speculative, future damages on an unpled claim, as the Arbitrator awarded here.

The Sanctions Award was far from "appropriate" as required by JAMS Rule 29 for myriad reasons, which Rothenberg ignores; and violates JAMS Rule 29's mandate that sanctions be based on the "failure of a Party to comply with … an order of the Arbitrator."

*First*, Procedural Order 7 upon which the Sanctions Award was based imposed unfair and overreaching obligations on Perles and Fay in connection with actions unrelated to the Arbitration. For context, Procedural Order 7 resulted from the April 16 Letter that Perles and Fay sent to *Peterson* plaintiffs, informing them that Rothenberg's position in the Arbitration raised questions about his ability to zealously represent them in their ongoing collection efforts. (Dkt. 1-10). Rothenberg paints the April 16 Letter as initiating a campaign to have *Peterson* plaintiffs terminate his representation (Fay Dkt. 26 at 4), entirely ignoring that ethics counsel advised Perles and Fay to send the letter to provide their clients with material information, consistent with their ethical obligations. (Dkt. 1-12 at 22).

9

Indeed, the Arbitrator denied Rothenberg's request to order Perles and Fay to retract the April 16 Letter because nothing prohibited the correspondence, and instead directed them to provide Rothenberg with the contact information of the letter's recipients so he could respond. (Fay Dkt. 29-24). Because Fay had continued to communicate with *Peterson* plaintiffs in response to inquiries concerning the April 16 Letter (which was also not prohibited), in Procedural Order 7, the Arbitrator ordered Fay and Perles to provide Rothenberg with "a detailed written statement of all communications with the Peterson Plaintiffs" regarding Rothenberg, the April 16 Letter, or the Arbitration. (Dkt. 1-11 at 9-10). Despite Rothenberg's ability to correspond with *Peterson* plaintiffs at-will and without notice to Perles or Fay, the Arbitrator imposed a continuing obligation on Perles and Fay, who, unlike Rothenberg, continued to render legal services to the *Peterson* plaintiffs, to disclose to Rothenberg extensive and ongoing details of their client communications.

*Second*, the Arbitrator ignored evidence that Perles never breached Procedural Order 7. In the Interim Award, the Arbitrator justified his sanctions by mistakenly claiming that he had enjoined Perles and Fay from "communicating any adverse information about the Claimant to any of the Peterson plaintiffs[.]" (Dkt. 1-12 at 5). When Perles pointed out in his motion to reconsider that no such prohibition was in effect (*see* Dkt. 1-13 at 4-5), the Arbitrator merely removed that language and shifted the focus of his ruling to the failure to disclose communications to Rothenberg. Rothenberg now contends for the first time that the Sanctions Award was based on Perles' and Fay's failure "to 'facilitate, and not contest' Rothenberg's … entitlement to legal fees from upcoming collections," under Procedural Order 7. (Fay Dkt. 26 at 4). In his Cross-Petition, by contrast, Rothenberg claimed only that the Sanctions Award "focused on the impropriety of Fay & Perles' conduct as an end-run around the Arbitration" and was "intended to protect the sanctity of the relief requested." (Fay Dkt. 11 at 81). The Arbitrator's issue in point of fact was

10

with Fay's purported "clandestine communications" with *Peterson* plaintiffs. (Dkt. 1-14 at 17). And based on these communications, the Arbitrator then drew an adverse inference against Perles although Perles was never involved in the sanctionable conduct. This is another argument which Rothenberg fails to address.

*Third*, the sanctions awarded were not "proportional to the harm" Rothenberg claims to have sustained. The Arbitrator awarded as sanctions any shortfall in Rothenberg's fees that resulted from his termination by *Peterson* plaintiffs (*id.* at 17-18) without any evidence to suggest that Fay's communications actually caused any *Peterson* plaintiffs to terminate Rothenberg. Indeed, Rothenberg never identified which of the *Peterson* plaintiffs had terminated him, or whether he took any action to alter their decision. (Dkt. 1 ¶ 146). Instead, the Arbitrator held that Perles and Fay would be held responsible to Rothenberger no matter the circumstances underlying any of the *Peterson* plaintiff's decisions to terminate him at any point in time. Rothenberg does not address the impropriety of the Sanctions Award in the absence of any such causation evidence.

## II. THE FINAL AWARD SHOULD BE VACATED FOR MANIFESTLY DISREGARDING THE LAW

In issuing the Final Award, the Arbitrator manifestly disregarded the law on unjust enrichment and unclean hands. *See N.Y. Tel. Co. v. Communs. Workers Loc. 1100*, 256 F.3d 89, 93 (2d Cir. 2001).

Preclusion of an unjust enrichment cause of action where a contract exists is a well-defined, explicit governing law which was clearly applicable to Rothenberg's unpled claim concerning Perles' and Fay's use of *Peterson* work product in the Follow-On Cases. (Dkt. 16 at 25). Notwithstanding, the Arbitrator held that the existence and validity of the Co-Counsel Agreement governing the parties' division of attorneys' fees in *Peterson* did not bar Rothenberg's claim. (Dkt. 1-15 at 46-48). Rothenberg contends that the Final Award did not manifestly disregard the law

11

because it relied on *Pauwels v. Deloitte LLP*, 83 F.4th 171 (2d Cir. 2023). (Fay Dkt. 26 at 10-12). However, *Pauwels* does not displace the law governing unjust enrichment claims in the face of valid contracts governing the same subject matter. Indeed, Rothenberg does not even address *Pauwels*' application to that rule, instead only analogizing that case to Rothenberg's claim in the Arbitration. (*Id.*). Aside from the many factual dissimilarities between them, *Pauwels* is not controlling because here, unlike in that case, the parties specifically bargained to exclude Rothenberg's entitlement to attorneys' fees from Follow-On cases in the Co-Counsel Agreement. (Dkt. 1 ¶¶ 46-49).

Another well-defined, explicit law is that a party with unclean hands is unable to seek equitable relief. *See Sorenson v. Winston & Strawn, LLP*, 162 A.D.3d 593, 593 (1st Dep't 2018). Here, Perles asserted unclean hands as an affirmative defense against Rothenberg's claim for equitable relief based on his numerous acts of misconduct during the Clearstream Asset collection effort. (*See* Dkt. 1 ¶ 186). One such act, which Rothenberg does not attempt to justify or even address, was his involvement with non-*Peterson* plaintiffs that sought to intervene in the Turnover Action. Rothenberg's actions directly threatened the ability of *Peterson* plaintiffs—his own clients—to recover any of the Clearstream Assets, and forced them to agree to share their award with the Rothenberg Intervenors through the Litigation Cooperation and Settlement Agreement. (*Id.* ¶ 188). Rothenberg contends that the Arbitrator "appropriately rejected Perles' unclean hands argument because he 'produced no viable evidence to support his assertion.'" (Fay Dkt. 26 at 6). However, Rothenberg's quoted language from the Final Award only refers to an assertion that Rothenberg improperly provided information concerning the Clearstream Asset to the Rothenberg Intervenors. (Dkt. 1-15 at 59). The Arbitrator failed to address whatsoever the argument that Stroock, which also represented Rothenberg personally, threatened *Peterson* plaintiffs' ability to

12

recover any of the Clearstream Assets by intervening in the Turnover Action, which also resulted in additional fees for Rothenberg at Perles' and Fay's expense. (*See* Dkt. 16 at 26-28).

## CONCLUSION

For the foregoing reasons, Perles respectfully request that the Court enter an Order vacating the Final Award and Sanctions Award, and denying Rothenberg's Cross-Petition, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
January 20, 2026

**MORRISON COHEN LLP**

By: */s/ Danielle C. Lesser*
Danielle C. Lesser
Edward P. Gilbert
Christopher C. LoBosco
909 Third Avenue
New York, NY 10022
(212) 735-8600
dlesser@morrisoncohen.com
egilbert@morrisoncohen.com
clobosco@morrisoncohen.com

*Attorneys for Steven R. Perles, Esq. and Perles Law Firm, P.C.*

**WORD COUNT CERTIFICATION**

Pursuant to Local Civil Rule 7.1 of this Court, I hereby certify that the total number of words in this Memorandum of Law, excluding the caption, table of contents, table of authorities, signature block, and word count certification is 4,000 in accordance with the word limit set by this Court in its Order Regarding the Consolidation of Proceedings and Briefing Schedule dated November 13, 2025 in this action.

*/s/ Danielle C. Lesser*
Danielle C. Lesser
